Burke, J,
(dissenting). While the complaint is perhaps inarticulately drawn, and several jurisdictionally necessary factors must be either inferred therefrom or found in accompanying affidavits, construing the complaint liberally as we are compelled to do we conclude that the defendant had sufficient minimum contacts in New York State required for the acquisition of in personam jurisdiction over it by the New York courts pursuant to CPLR 302 (subd. [a], par. 1). The facts of this case present us with an unmatched situation, something more than existed in Kramer v. Vogl (17 N Y 2d 27 [1966]) where jurisdiction was refused, and something less than existed in Longines-Wittnauer Watch Co. v. Barnes & Reinecke (15 N Y 2d 443 [1965]) where jurisdiction was sustained.
*384 In Kramer v. Vogl, the defendant company was based in Austria, and sent all its shipments of goods to the plaintiff in New York f. o. b. European ports (as the defendant did here from Illinois). In addition, the original contractual arrangement was consummated, not in New York, but rather in Paris (as opposed to Rauland-Borg’s contract with the plaintiff, which was assumed by the Trial Judge to have been executed in New York State and which was, in any event, negotiated here). As former Chief Judge Desmond stated for a unanimous court, “ The issue boils down to whether the phrase ‘ transacts any business within the state ’ covers the situation of a nonresident who never comes into New York State but who sells and sends goods into the State pursuant to an order sent from within the State. We do not have here, as we have in Singer [15 N Y 2d 443], Lewin [16 N Y 2d 1070] and Johnson [16' N Y 2d 1067] (supra) a nonresident defendant who has one or more local salesmen in this State or who solicits business in this State by means of catalogue, advertisements or other promotional material circulated here. All we know is that these defendants in Austria made arrangements [in Paris] to sell merchandise f. o. b. to the local distributor. Defendants themselves carried on no sales, promotion or advertising activities in this State. * * * Nowhere does it appear how much of the Vogl leather bought by plaintiff was resold to New York State customers or used in New York.” (17 N Y 2d, supra, pp. 31-32.)
In the present case there are undoubtedly more contacts with New York State than existed in Kramer. The question is whether they are sufficient, under CPLR 302 (subd. [a], par. 1), to amount to the transaction of business so that the courts of this State may validly obtain personal jurisdiction over the defendant. In Kramer, the only contact with New York was the shipment of the defendant’s goods into the State for subsequent sale by the plaintiff (cf. CPLR 302, subd. [a], par. 3, eff. Sept. 1, 1966). The original distributorship contract was not executed or negotiated here (as it was in the present case) ; we had no indication as to what quantity of Vogl leather was resold or used in New York (contrary to the present case, where it is understood that bulk of plaintiff’s work was done in Westchester County — thus Rauland-Borg’s goods, sent into *385 this State, were sold to and used by customers in this State); and, thirdly, the defendant in Kramer at no time sent anyone into the State for advertising, promotion or selling purposes (as opposed to the conduct of Bauland-Borg, who on several occasions sent its representatives into New York to confer with the plaintiff and allegedly to placate the codefendant engineers with whom the plaintiff was encountering difficulties). At the very least this conduct on the part of Bauland-Borg must be considered promotional, since its sole purpose, according to the defendant, was to enhance its distributor’s position with those who controlled the Westchester market, the consulting engineers. As we view the differences between this case and Kramer v. Vogl, they are substantial and significant enough to warrant the finding that, under the facts before the trial court on this motion to dismiss, the defendant did have sufficient minimum contacts with this State in its transaction of business here and, therefore, did submit itself to the possibility of the acquisition of in personam jurisdiction under our long-arm statute.
In Longines-Wittnauer Watch Co. v. Barnes & Reineche (supra) the court was unanimous in its finding of sufficient minimum contacts to sustain the exercise of jurisdiction under CPLB 302 (subd. [a], par. 1), just as it was unanimous in denying jurisdiction in Kramer. Chief Judge Fuld spoke for the court: 11 The activities in which the appellant engaged in this State were assuredly adequate to meet the liberal statutory criterion. They comprised substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,000; and the rendition of services over a period of some three months by two of the appellant’s top engineers in supervising the installation and testing of the complex machines.
“ We need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard.” (15 N Y 2d, supra, pp. 457-458; emphasis added.)
Longines was in no way meant to define the miuimnm contacts required, and somewhere between Kramer and Longines there *386 exists a mythical line of demarcation: cases which fall above the line meet the constitutional and procedural standards; those which fall below the line do not. In our opinion, contrary to that of the majority, the present case satisfies both the constitutional and procedural criteria, and falls close enough to Longines so that jurisdiction should be sustained because of the defendant’s transaction of business in this State. Here the defendant caused a distributorship agreement to be executed or at least negotiated by one of its agents in New York; this oral contract was renewed annually for approximately eight years; Rauland-Borg shipped goods into the State for purposes of sale by its distributor in New York to New York customers for use in New York; when the difficulties which ultimately led to this suit arose in 1964, it sent first of all the manager of its sound products division (certainly a top level employee) into the State in an attempt to resolve the problem; he was accompanied on this visit by the defendant’s northeast sales representative, who made “a few” subsequent visits to this State allegedly on similar peace missions. We do not concern ourselves with adding and subtracting hours and minutes; on the contrary, realistically viewing the situation as a whole, we conclude that the defendant’s intentional contacts with New York, described by the majority today as ‘ ‘ infinitesimal, ’ ’ are certainly far more than existed in Kramer v. Vogl, and enough to warrant the exercise of jurisdiction in personam over the defendant by our courts. The nondomiciliary defendant most assurdly “ has engaged in some purposeful activity in this State in connection with the matter in suit.” (Longines-Wittnauer Watch Co. v. Barnes & Reinecke, supra, p. 457; Millner Co. v. Noudar, Lda., 24 A D 2d 326, 331 [1st Dept., 1966]; see, also, Katz & Son Billiard Prods, v. Correale & Sons, 26 A D 2d 52 [1st Dept., 1966].) Furthermore, we cannot agree with the suggestion that maintenance of this action in our courts will offend the ‘ ‘ traditional notions of fair play and substantial justice ” referred to in International Shoe Co. v. Washington (326 U. S. 310, 316 [1945]). In our opinion, under this test, Rauland-Borg purposefully availed itself of the privilege of conducting activities within this State, and thereby invoked the benefits and protections of our laws, as well as the concomitant obligations and liabilities. (Hanson v. Denckla, 357 U. S. 235, 253- [1958]; *387 Longines-Wittnauer Watch Co., v. Barnes & Reinecke, supra, p. 458.) (See, generally, McLaughlin, Practice Commentary and Supplementary Practice Commentary to CPLR 302, McKinney’s Cons. Laws of N. Y., Book 7B [1964, 1965, 1966]; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.01 et seq.)
There is one recent Federal ease worthy of note at this juncture: Liquid Carriers Corp. v. American Mar. Corp. (375 F. 2d 951), decided by the Second Circuit Court of Appeals on February 28, 1967. That case dealt with a factual situation not unlike the one presented on this appeal, i.e., the case fell somewhere in between Longines and Kramer, and as to the transaction of any business the court held that there were sufficient minimum contacts to sustain personal jurisdiction over the foreign corporate defendant. The suit involved a breach of contract ; the contract was to be performed outside this State; the only contacts with New York had to do with the negotiation and execution of the contract here. After discussing both Longines and Kramer and noting the absence of any decision dealing with the precise situation presented, the court proceeded to decide the case as it believed the New York courts would have decided it. Its opinion, written by Judge Watekman, is illuminating: “While this section [CPLR 302, subd. (a), par. 1] has not been interpreted as extending New York’s jurisdiction over nondomiciliaries as far as the United States Constitution allows, see Kramer v. Yogi * * *; A. Millner v. Noudar, Lda., 24 A. D. 2d 326, 329 * * *; United States v. Montreal Trust Co., 358 F. 2d 239, 242 * * *, it has been construed so as to find a transaction of business in cases where a defendant’s agents or property have been physically present in the state and have received the protection of New York laws.” (375 F. 2d, supra, p. 955.)
The Federal court’s view coincides with our own, and its analysis bolsters our conclusion that the activities of RaulandBorg’s agents and employees within New York were sufficient to constitute the transaction of business under CPLR 302 (subd. [a], par. 1) and to subject that defendant to the jurisdiction of our courts.
Consequently, the defendant transacted some business in this State, the causes of action alleged (breach of contract, conspiracy in restraint of trade, illegally divesting plaintiff of his *388 good name and customers, and conspiracy to create a monopoly) arose out of this commercial conduct, and the defendant should, therefore, be susceptible to the exercise of personal jurisdiction over it by the New York courts. In reaching this conclusion we are not unmindful of the reciprocity aspect of such a determination, the danger of which was referred to by the First Department only last year: 11 Enthusiasm for extending jurisdiction over foreign persons in foreign lands in limited contact cases, however, may well be tempered by the expectation that the same rule will be reciprocally applied in remote countries against bur citizens here.” (Millner Co. v. Noudar, Lda, supra, p. 329.) In this regard, however, the public policy of our State is determined by the Legislature which, in its most recent amendment to 302, has indicated a notable disregard for such sentiments. Accordingly, any such judicial fears can hardly be dispositive of the important legal question presented in this case. (See Kropp Forge Co. v. Jawits, 37 Ill. App. 2d 475.)
The order of the Appellate Division, which affirmed the order of Special Term dismissing the complaint for lack of in personam jurisdiction under CPLR 3211 (subd. [a], par. 8), should be reversed.
Judges Van Voorhis, Bergan and Breitel concur with Judge Scileppi; Judge Burke dissents and votes to reverse in an opinion in which Chief Judge Fule and Judge Keating concur.
Order affirmed.