Kropp Forge Company, an Illinois Corporation, Plaintiff-Appellee, v. Harry Jawitz, d/b/a Transformer Company of America, Defendant-Appellant.

Gen. No. 48,699.

First District, First Division.

October 29, 1962.

Cohen, Cohen & Fiffer, of Chicago (Nathan M. Cohen, Robert S. Fiffer, Allan N. Lasky and Howard L. Korengold, of counsel), for appellant.

Norville, Walsh & Case, of Chicago (Richard J. Walsh, Robert O. Case and Alan S. Ganz, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an action for contract damages. Defendant, Harry Jawitz, a nonresident, appeals from a $2600 judgment entered against him in a nonjury trial in the Superior Court of Cook County, Illinois.

Two principal questions are presented: (1) whether the nonresident defendant transacted "any business" within the State of Illinois sufficient to submit defendant "to the jurisdiction of the courts of this state"; and (2) whether the evidence is sufficient to sustain plaintiff's judgment.

Personal service of summons was made on defendant outside of the State of Illinois (§ 16, Civil Practice Act). Defendant filed a special appearance and then moved to quash service of process for lack of jurisdiction over the person of defendant. The motion, supported by an affidavit setting forth the reasons (§ 20, Civil Practice Act), was overruled. Defendant answered, denying the material allegations of plaintiff's complaint and the existence of a contract between the parties, and again denied jurisdiction of the court over the person of defendant.

The evidence shows that plaintiff, in Chicago, and defendant, in New York, by correspondence commencing December 6, 1957, conducted negotiations for the purchase by defendant, from plaintiff, of turbines and generators located in plaintiff's plant at Cicero, Illinois. It is undisputed that defendant, after the exchange of correspondence, visited plaintiff's premises in Cicero, Illinois, on January 15, 1958, where he conversed with plaintiff's employees, inspected the powerhouse in which the turbines and generators were located, and took measurements of the equipment and the powerhouse doorway. A witness for plaintiff, A. F. Tydeman, an employee, testified that after the inspection was completed, defendant left with the "parting statement that he was going to have lunch with his riggers at the Palmer House and make final arrangements for the removal of the equipment."

Defendant, by deposition, testified that at the time of his visit to plaintiff's premises on January 15, 1958, he examined the equipment and found that the turbines were of a condensing type and were therefore unacceptable; that he left the premises and later that day, while at the airport, unsuccessfully tried to reach Tydeman by telephone; and that in Tydeman's absence, he left the message that "I had to leave

and there was nothing I could do about the steam turbines."

Tydeman testified he was never informed of defendant's telephone call from the airport, and that on January 16, 1958, by letter to defendant in New York (in evidence), he confirmed the meeting and asked for information as to "the arrangements which have been made for the removal of the equipment." The foregoing, in substance, is the basis on which the trial court found for plaintiff and that defendant was subject to the jurisdiction of the courts of Illinois.

On the question of jurisdiction, defendant contends that he never transacted business in Illinois within the meaning of Section 17 of the Civil Practice Act. Of the various forms of activity set forth in Section 17(1), by which defendant might be held to have submitted himself to the jurisdiction of the Illinois courts, only subsection (1)(a) is relevant here. This provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State."

Defendant's affidavit in support of his motion to quash the summons states, and it is not controverted, that: he is a resident of the State of New York; never maintained any office, telephone, situs or location in Illinois, nor employed any help of any kind in the state; and that during the years 1957 and 1958, other than the correspondence in this suit and the trip to Chicago in January, 1958, he was not present in Illinois and transacted no business in Illinois.

478

As pointed out by defendant, the Supreme Court of the United States in the case of Hanson v. Denckla, 357 US 235 (1958), stated:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

█ The landmark case of International Shoe Co. v. State of Washington, 326 US 310 (1945), pronounced the requirement of "minimum contacts" with the forum state as a necessary precondition to the assertion of jurisdiction over a nonresident defendant. There (p 316), the United States Supreme Court said:

". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The International Shoe doctrine of "minimum contacts" is now the gauge of the appropriateness of jurisdiction over nonresident defendants.

The Illinois courts have recognized that the above authorities are controlling. In Grobark v. Addo Machine Co., Inc., 16 Ill2d 426, 158 NE2d 73 (1959), the Illinois Supreme Court reviewed at length the major pertinent decisions with respect to jurisdiction over nonresidents (including Nelson v. Miller, 11 Ill2d 378, 143 NE2d 673 (1957)) in the context of a case in-

volving the construction of Section 17(1)(a) of the Civil Practice Act, here involved.

Defendant asserts that he "did nothing more than send a letter and a telegram to the plaintiff, and spend one morning in Illinois examining the equipment." He argues, from the Grobark case, that "a visit alone even coupled with other activities does not necessarily vest the court with jurisdiction." Also cited to support the contention that a single isolated transaction in the forum state does not satisfy the "minimum contact" requirements are Morgan v. Heckle, 171 F Supp 482 (ED Ill 1959), and E. Film Corp. v. United Feature Syndicate, Inc., 172 F Supp 277 (ND Ill 1958). We are not persuaded that these authorities apply here.

In the Morgan case, the defendant never entered Illinois in connection with the transaction. In the E. Film Corp. case, the court stated, "The contract on which plaintiff bases its actions was not entered into in Illinois." In the Grobark case, the terms of the contract were contained in a letter from defendant in New York City to plaintiffs in Chicago, and the performance consisted of shipping goods into Illinois. The Grobark holding is that contracting from outside Illinois and shipping goods into Illinois via an independent carrier was not transacting business in Illinois, so as to constitute an act subjecting a New York corporation to the jurisdiction of an Illinois court, when the nonresident defendant had no agents or offices in Illinois, even though, as the opinion indicates, negotiations preliminary to the contract were carried on in Illinois.

■ It is our conclusion, from the reasoning in the Grobark case (p 437), that the performance of jurisdictional acts by a nonresident or his agent, while physically present in Illinois, is essential for submission to the jurisdiction of the courts of this state under

480

Section 17(1)(a). Saletko v. Willys Motors, Inc., 36 Ill App2d 7, 12, 183 NE2d 569 (1962).

■ We believe that the ultimate test is the substance of the act rather than the quantity. The criteria "cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Co. v. State of Washington, 326 US 310, 319.

We conclude that the "minimum contacts" with Illinois, required by due process to subject defendant to in personam jurisdiction of the courts of this state, are evidenced by this record. Either the making of the alleged contract itself, or the activity in furtherance of it, while defendant was physically present in Illinois, is the business shown to have been transacted by defendant within Illinois, and distinguish this case on the facts from those in the Grobark case. Defendant, by his acts done in Illinois, purposefully availed himself of the privilege of conducting business activities within this state, "thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 US 235, 253.

■ The second principal contention of defendant is that the essential elements of a contract, i. e., an offer and an acceptance, are not shown by plaintiff's evidence.

Plaintiff's contractual theory is in the alternative; either the contract was made by defendant's telegram of December 22, 1957, the offer, and plaintiff's responsive letter of January 8, 1958, the acceptance, or the contract was made by plaintiff's letter of January 8, 1958, a counteroffer, and defendant's acts in plaintiff's plant in Cicero, Illinois, on January 15, 1958, the

acceptance of the counteroffer. Under either theory, plaintiff argues a binding contract of sale was entered into by the parties.

Defendant's telegram of December 22, 1957, sent to plaintiff at Chicago, said:

"Both turbines with generators worth $2600 as is where is, or $3600 loaded on cars. Please wire whether they are condensing or non condensing. Our man can arrive January fourth with payment and take care of shipping."

Plaintiff's letter of January 8, 1958, to defendant in New York, stated:

". . . we hereby accept your offer of $2,600.00 for both turbines and generators, as-is, where-is to be removed by your agent without damage or dislocation of our premises and you to furnish certificates of insurance.

"Please advise when your representative will arrive with payment to make shipping arrangements."

Plaintiff contends this letter was an "acceptance" of defendant's telegraphed "offer" of December 22, 1957. Defendant contends that plaintiff's letter of January 8 cannot be considered an acceptance, because the Illinois courts have uniformly held that the acceptance must conform exactly to the offer (Whitelaw v. Brady, 3 Ill2d 583, 589 (1954)) and must be unconditional, unequivocal, and unqualified. Worley v. Holding Corp., 348 Ill 420, 181 NE 307 (1932).

Plaintiff argues its letter was not a counteroffer, and that the expression, "to be removed by your agent without damage or dislocation of our premises and you to furnish certificates of insurance," was a "custom and usage" trade expression. This is denied by defendant. We make no determination of this contention because we have concluded that defendant's acts at plaintiff's plant in Illinois, on January 15, 1958, which climaxed the previous negotiations, con-

482

stituted an acceptance of the alleged counteroffer, and made a binding contract of sale between the parties.

Two witnesses testified for plaintiff as to the transaction at the Kropp plant. Defendant did not directly contradict their testimony, and he was silent as to the taking of measurements. Generally, he disclaimed any agreement to purchase the equipment at any time.

█ Where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court unless we can say that the judgment is against the manifest weight of the evidence. (Ezydorski v. Krozka, 31 Ill App2d 79, 175 NE2d 668 (1961).) We cannot say, as we must in order to reverse, that on the record before us an opposite conclusion is clearly apparent. Olin Industries, Inc. v. Wuellner, 1 Ill App2d 267, 117 NE2d 565 (1954).

For the reasons stated, the order and judgment appealed from are affirmed.

Affirmed.

BURMAN, P. J. and ENGLISH, J., concur.