E.A. COX COMPANY, Plaintiff-Appellee, v. ROAD SAVERS INTERNA-
TIONAL CORPORATION, Defendant-Appellant.

First District (4th Division)  No. 1—94—1031

Opinion filed March 16, 1995.

Boehm, Pearlstein & Bright, Ltd., of Chicago (Gary I. Blackman, of counsel), for appellant.

McCracken, Walsh, deLavan & Hetler, of Chicago (Thomas G. Moffitt and Andrew J. Anderson, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

On June 1, 1993, the plaintiff, E.A. Cox Company, an Illinois corporation, filed a two-count complaint against the defendant, Road Savers International Corporation, a Michigan corporation, in the circuit court of Cook County. Count I of that complaint sought damages for breach of contract and count II sought damages for breach of implied warranty. Upon being served in Almont, Michigan, the defendant responded by filing a special appearance and a motion to quash service of summons contesting the court's *in personam* jurisdiction. On September 23, 1993, the trial court denied the defendant's motion to quash service. On October 29, 1993, the defendant filed its answer to the plaintiff's complaint along with what it characterized as seven "affirmative" defenses. On November 18, 1993, the plaintiff filed its motion seeking a summary judgment in the sum of $366,000 plus prejudgment interest. The defendant filed its response to the plaintiff's motion, the plaintiff filed a reply in further support, and the motion was heard on January 20, 1994. The trial court struck four of the defendant's affirmative defenses and entered a summary judgment in favor of the plaintiff on count I of its complaint in the sum of $366,000. On February 2, 1994, pursuant to the plaintiff's motion, the trial court entered an order permitting the plaintiff to voluntarily dismiss count II of its complaint. On February 17, 1994, the defendant filed its motion seeking a reconsideration of the order of January 20, 1994, and requesting that the court deny the plaintiff's motion for summary judgment. On March 1, 1994, the trial court denied the defendant's motion to reconsider and this appeal followed. The defendant has placed in issue the propriety of: (1) the trial court's order denying its motion to quash service of summons; and (2) the summary judgment entered against it. We will address each order separately.

In urging that the trial court's ruling on jurisdiction should be reversed, the defendant argues that the courts of Illinois lack *in personam* jurisdiction over it because: (1) the plaintiff's complaint fails to allege sufficient facts to establish jurisdiction; (2) the defendant did not "transact business" in Illinois within the meaning of section 2—209(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—

209(a)(1) (West 1992)); (3) the contract in issue lacked any substantial connection with Illinois as required under section 2—209(a)(7) of the Code of Civil Procedure (735 ILCS 5/2—209(a)(7) (West 1992)); and (4) the exercise of jurisdiction over it would violate the due process clause of the fourteenth amendment of the United States Constitution. We disagree with each of the defendant's contentions on this issue.

At the time that the trial court ruled on the defendant's jurisdictional motion, it had before it the plaintiff's complaint, the defendant's motion supported by the affidavit of its president, Patrick L. O'Connor, and the plaintiff's response to the motion supported by the affidavit of its vice-president, John Cox. We summarize only the factual matters contained in those pleadings and affidavits which are pertinent to resolving the issues presented by this appeal.

The defendant is a Michigan corporation engaged in the sale of road construction equipment and maintains its principal place of business in Almont, Michigan. In late April and early May 1993, representatives of the plaintiff telephoned the defendant and requested quotes for the purchase of two pieces of road repaving equipment, a 1993 Road Master repaver and a 1993 Heat Master preheater, to be used by the plaintiff if it was the successful bidder on a certain repaving contract with the City of Chicago (City). The plaintiff faxed the contract specifications to the defendant and received quotes for the equipment. On May 4, 1993, the City announced that the plaintiff was the low bidder for the repaving contract but advised the plaintiff that it required an immediate inspection and testing of the repaving equipment prior to awarding the contract to determine if the equipment met its contract specifications. On May 5, 1993, the plaintiff's employees telephoned the defendant stating that the plaintiff had been the successful bidder for the repaving contract with the City and indicating that the plaintiff wished to send its representatives to Michigan to see the equipment that it was interested in purchasing. On May 7, 1993, four of the plaintiff's employees traveled to Almont, Michigan, and witnessed a demonstration of the Road Master.

Following the demonstration, the plaintiff and the defendant executed an agreement in Almont, Michigan, a copy of which is attached to the plaintiff's complaint and forms the basis of the instant action. That document, dated April 29, 1993, provided, *inter alia*, that: the plaintiff purchased the Road Master and the Heat Master for the sum of $470,000 with a $94,000 deposit; the estimated completion dates for the equipment would be 30 days for the Heat Master and 90 days for the Road Master; the price included technicians from the de-

fendant working on the jobsite for two full weeks to familiarize the plaintiff's operators with the machines and the routine maintenance that they require; and the agreement was based upon both machines meeting the specifications of the City and in the event that they did not, the plaintiff would receive a full refund of its deposit.

On May 10, 1993, the plaintiff wire transferred its $94,000 deposit to the defendant in Michigan. On May 12, 1993, John Cox informed the defendant of the City's requirement that the equipment be inspected and tested prior to accepting the plaintiff's bid and awarding it the repaving contract. On May 12 or 14, 1993, the plaintiff wire transferred an additional $272,000 to the defendant in Michigan. On May 14 or 15, 1993, the plaintiff picked up the Road Master from the defendant in Michigan. Because the defendant did not have a Heat Master in stock, it borrowed a 1987 Heat Master from one of its other customers for demonstration purposes and delivered the machine to the plaintiff in Chicago on May 16, 1993.

On May 19, 1993, representatives of the defendant arrived at the plaintiff's premises in Chicago to perform repairs on the borrowed Heat Master to prepare for the City's inspection and testing of the equipment which was scheduled for May 24, 1993. On May 24, 1993, the City tested both pieces of equipment in Chicago. Representatives of the defendant drove the equipment from the plaintiff's premises to the test site and operated both pieces of equipment during the test. After the test, the City officials informed representatives of both the plaintiff and the defendant that the equipment failed to meet contract specifications. The defendant's representative requested that he be allowed to make certain modifications to the equipment and that it be retested. The City agreed.

The defendant's employees drove the equipment back to the plaintiff's premises, where they performed repairs to both machines. On May 25, 1993, the defendant's employees drove the machines back to the test site and operated the equipment during the second test. After the second test, a City official notified the representatives of the plaintiff and the defendant that the equipment had again failed.

On May 27, 1993, the plaintiff received a copy of a letter from the commissioner of the City's Department of Transportation to its purchasing agent indicating that the equipment had failed to meet the City's specifications and requesting that the purchasing agent deem the plaintiff's bid nonresponsive to the contract specifications and award the contract to the next lowest bidder. The plaintiff demanded that the defendant return its money, but the defendant refused and the instant action was commenced.

From the unrebutted facts alleged in O'Connor's affidavit, it is clear that the defendant is a nonresident subject to the *in personam* jurisdiction of the Illinois courts only through our long-arm statute in section 2—209. (735 ILCS 5/2—209 (West 1992).) Consequently, the plaintiff bore the burden of establishing a *prima facie* valid basis upon which jurisdiction over the defendant could be exercised. (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360.) In considering a challenge to personal jurisdiction, conflicts between the defendant's affidavits and the plaintiff's pleadings and affidavits will be resolved in favor of the plaintiff for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been made. (*Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 483 N.E.2d 1291; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 421 N.E.2d 231.) Since the trial court did not hold an evidentiary hearing on the defendant's motion attacking its jurisdiction, our review of the issue is *de novo. Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 491 N.E.2d 39.

When jurisdiction over the person of a nonresident defendant is premised upon our long-arm statute, the court must apply a two-step analysis to determine whether the exercise of that jurisdiction is proper. (*R.W. Sawant & Co.,* 111 Ill. 2d at 311.) The first step is to determine if jurisdiction is proper under section 2—209. If the answer is no, the inquiry ends; but if jurisdiction is found to be proper under the statute, then we reach the second step and determine whether the exercise of jurisdiction comports with due process of law.

Pertinent to the issues in this case, section 2—209 provides in part as follows:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person \*\*\* to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

\* \* \*

(7) The making or performance of any contract or promise substantially connected with this State;

\* \* \*

(f) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a)." 735 ILCS 5/2—209 (West 1992).

As the court stated in *Konicki v. Wirta* (1988), 169 Ill. App. 3d 21, 26, 523 N.E.2d 160:

"To constitute the 'transaction of any business' within this State and, thus, bring a nonresident within the jurisdiction of Illinois courts, a defendant must voluntarily seek the benefits and protections of the laws of this State. [Citations.] Section 2—209(a)(1) requires, essentially, that a plaintiff's claim lie in the wake of the commercial activities by which defendant allegedly submitted to the jurisdiction of the Illinois courts. [Citation.] Only the acts of a defendant can be considered in determining whether business was transacted in Illinois. [Citation.] The determination of whether a defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors, such as who initiated the transaction, where the contract was entered into, and where the performance of the contract was to take place."

■ In response to the defendant's argument that the plaintiff's complaint fails to allege facts establishing the court's long-arm jurisdiction (see *Heller Financial, Inc. v. Conagra, Inc.* (1988), 166 Ill. App. 3d 1, 520 N.E.2d 922), we note that the agreement between the parties dated April 29, 1993, is attached to the plaintiff's complaint and incorporated therein as an exhibit. When exhibits are incorporated into a pleading, the facts set forth in the exhibit are a part of the pleading with the same effect as if they had been alleged in the body of the pleading itself. (*Mineral Resources, Inc. v. Classic Coal Corp.* (1983), 115 Ill. App. 3d 114, 450 N.E.2d 379.) The written agreement at issue in this case contemplates that the subject equipment would meet the specifications of the City; more to the point, the price term includes technicians from the defendant working with the equipment on the jobsite for two weeks. By its terms, the agreement provides for part performance by the defendant in Illinois. Since the plaintiff's action is grounded upon allegations of breach of a contract which contemplated commercial activity on the part of the defendant in this State, we believe that the plaintiff's complaint pleads sufficient facts to establish the long-arm jurisdiction of the courts of Illinois under a transaction of business theory. See *Rose v. Franchetti* (7th Cir. 1992), 979 F.2d 81; *Ellis Corp. v. Team Textile Corp.* (N.D. Ill. 1983), 574 F. Supp. 170.

Once we look past the allegations of the plaintiff's complaint and consider the content of the affidavits of O'Connor and Cox, it becomes apparent that the defendant not only entered into an agreement with an Illinois resident that contemplated part performance in this State, it delivered a borrowed piece of equipment to the plaintiff in Illinois, sent employees into this State to operate the equipment while it was tested by the City, and performed repairs to the equipment in Illinois in an effort to render it acceptable to the City. We do not

believe that the plaintiff's solicitation of the defendant in Michigan and the fact that the written agreement entered into between the parties was executed in Michigan mandate a finding that the courts of Illinois are without jurisdiction. The focus of our inquiry is not upon the amount of commercial activity occurring between the parties outside of Illinois, but rather, it is upon the defendant's activities within this State and whether those activities are sufficient to subject it to the *in personam* jurisdiction of the Illinois courts. (*Mandalay,* 141 Ill. App. 3d at 895.) When the totality of the evidentiary material available to the trial court at the time that it made its jurisdictional ruling is considered, we find that it supports the conclusion that the defendant transacted business in Illinois within the meaning of section 2—209(a)(1) and that the performance of the contract in issue was substantially connected to this State as contemplated by section 2—209(a)(7).

Since the plaintiff established a *prima facie* basis for jurisdiction over the defendant under our long-arm statute, we must now determine whether the exercise of that jurisdiction would be consistent with due process. Whether due process is satisfied in any given case depends upon the quality and nature of the defendant's activity in relation to the fair and orderly administration of justice. Due process is satisfied when the defendant's contacts with the forum State make it reasonable for it to anticipate being called to account in that jurisdiction. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) The performance of activity in Illinois by a defendant in substantial furtherance of the terms of a contract, even one executed outside of Illinois, is sufficient to satisfy the due process requirements for the exercise of jurisdiction by the courts of Illinois in matters relating to that contract. When the defendant entered into a contract that required part performance in Illinois and then subsequently entered this State to perform acts in furtherance of that contract, it availed itself of the privilege of doing business in this State and invoked the benefits and protections of our laws. (*Kropp Forge Co. v. Jawitz* (1962), 37 Ill. App. 2d 475, 186 N.E.2d 76.) We believe that the record in this case amply demonstrates the defendant's minimum contacts with Illinois in the performance of acts in furtherance of its contract obligations with the plaintiff so as to satisfy due process and subject the defendant to the *in personam* jurisdiction of the courts of this State in an action for breach of that contract.

Having found that the trial court properly denied the defendant's jurisdictional motion, we now address the propriety of the summary judgment entered against it. In urging reversal, the defendant

contends that the record reveals genuine issues of material fact that preclude the entry of summary judgment in the plaintiff's favor. We agree.

When the trial court ruled on the plaintiff's motion for summary judgment, it had before it the plaintiff's complaint, the defendant's answer and affirmative defenses, the plaintiff's response to the affirmative defenses, an affidavit of John Cox dated September 15, 1993, affidavits of Patrick O'Connor dated August 2, 1993, and January 6, 1994, and the affidavit of Mike Buhtanic dated January 10, 1994. With its motion to reconsider, the defendant submitted the supplemental affidavit of Patrick O'Connor dated February 16, 1994. Since the trial court has the discretion to decide whether it will accept evidentiary material in opposition to a motion for summary judgment submitted for the first time with a motion to reconsider (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 545 N.E.2d 689), and because it appears from the transcript of the hearing on the defendant's motion to reconsider that the trial court considered O'Connor's supplemental affidavit, we will also consider it in our analysis.

The parties do not dispute the execution of the agreement dated April 23, 1993, nor do they dispute its terms. Their dispute surrounds the plaintiff's right to a refund of the $366,000 that it paid the defendant when the City rejected the equipment as noncompliant with its contract specifications. The plaintiff, for its part, relies upon that portion of the agreement which states:

"THIS AGREEMENT IS BASED UPON THE ROAD MASTER AND HEAT MASTER MEETING THE CITY OF CHICAGO SPECIFICATIONS AND THEIR ACCEPTANCE. IF THEY DO NOT MEET THE SPECIFICATIONS AND ACCEPTANCE, E.A. COX CONSTRUCTION COMPANY WILL RECEIVE A FULL REFUND OF THEIR DEPOSIT."

The defendant argues that the agreement was orally modified subsequent to its execution and the refund provision was waived. In granting summary judgment for the plaintiff, the trial court found that the subsequent oral modification of the agreement went only to the delivery terms and not to the refund provision. Consequently, since the parties did not dispute that the City had in fact rejected the equipment, the trial court entered summary judgment in favor of the plaintiff on count I of its complaint.

As the propriety of granting a motion for summary judgment is a question of law, our review of such an order is *de novo*. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.) Section 2—1005 of the Code of Civil Procedure, which governs summary judgment

proceedings, provides: "[t]he judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); see also *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) In ruling on a summary judgment motion, the court is to construe all evidentiary material in a light most favorable to the respondent to the motion. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) Because summary judgment is a drastic measure which disposes of a case without trial, it should not be granted unless the right of the movant is free from doubt. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.

When the terms of a written contract are complete and clear, parol or extrinsic evidence of prior or contemporaneous agreements or understandings shall not be admissible to vary or add to those terms. (Restatement (Second) of Contracts § 239 (1981); see also *Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 186 N.E.2d 285; *Saddler v. National Bank* (1949), 403 Ill. 218, 85 N.E.2d 733.) However, extrinsic evidence is admissible to show a subsequent oral agreement which modifies the terms of a written contract or to show that a provision of a written contract has been waived. (*Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 412 N.E.2d 1142.) When extrinsic evidence is introduced to establish a subsequent modification of a written contract or to establish that a provision of a written contract has been waived, the question of the final agreement of the parties is usually one of fact for the jury. (*Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 529 N.E.2d 1138.) However, if after consideration of the extrinsic evidence, the court determines that reasonable men could reach only one conclusion, the issue can be decided by the court as a matter of law. *Wald,* 175 Ill. App. 3d 607, 529 N.E.2d 1138.

■ There is no doubt from the evidentiary material in the record that the written agreement between the parties was orally modified after its execution. The parties agreed to an early delivery of the Road Master upon the plaintiff's payment of $272,000 in addition to the deposit of $94,000 that it had already paid. The issue presented is whether the oral modification encompassed a waiver of the refund provision contained in the written agreement. The trial court found as a matter of law that it did not and granted the plaintiff's motion for summary judgment. However, Patrick L. O'Connor, in his affida-

vit dated February 16, 1994, submitted in support of the defendant's motion for reconsideration, states that John Cox, the plaintiff's vice-president, agreed to eliminate the refund provision. This testimony alone created a question of fact precluding summary judgment on the issue. Summary judgment procedure is not designed to resolve a disputed issue of fact but rather to determine if one exists. When, as in this case, an examination of the record reveals the existence of a triable issue of fact, summary judgment must be denied. *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 169 N.E.2d 73.

For the reasons stated above, the order of the trial court denying the defendant's motion to quash service of process is affirmed and the order of the trial court granting the plaintiff's motion for summary judgment is reversed. This case is remanded to the circuit court for further proceedings.

Affirmed in part; reversed in part and remanded.

CAHILL and THEIS, JJ., concur.