D.S. AMERICA (EAST), INC., d/b/a Screen (East), Plaintiff-Appellant, v. ELMENDORF GRAFICA, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—93—2472

Opinion filed July 26, 1995.—Rehearing denied September 19, 1995.

Edward J. Underhill, Susan M. Rentschler, and Steven L. Katz, all of Masuda, Funai, Eifert & Mitchell, Ltd., of Chicago, for appellant.

Rodriguez & Villalobos, of Chicago (John A. Goudge and Tomas A. Ramirez, of counsel), for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff D.S. America (East), Incorporated, d/b/a Screen (East), an Illinois corporation, filed a breach of contract action against defendant Elmendorf Grafica, Incorporated, a Puerto Rico corporation, seeking to recover an unpaid balance of $36,000. The trial court granted defendant's motion to dismiss for want of personal jurisdiction.

On appeal plaintiff asserts, *inter alia,* that the nonresident corporate defendant is subject to personal jurisdiction in Illinois under the long-arm statute (735 ILCS 5/2—209 (West 1992)). We agree and reverse the dismissal order and remand this matter to the trial court.

Since we find that there is *in personam* jurisdiction in Illinois, we need not consider plaintiff's challenges to an implicit ruling by the trial court denying plaintiff's motion for a default judgment and to the denial of plaintiff's motion to quash defendant's special and limited appearance based upon the allegation that defendant appeared generally requesting time to respond to plaintiff's motion for a default judgment.

The pleadings and affidavits provide the facts relevant to the jurisdictional issue in this case: (1) plaintiff's verified complaint with the subject purchase agreement attached as an exhibit; (2) defendant's motion to dismiss for want of personal jurisdiction with the affidavits of Carlos Cruz (president of defendant) and Hector Santiago (supervisor of the scanning and retouching department of defendant); (3) plaintiff's response to defendant's motion to dismiss and an attached affidavit of Edward S. Kennedy (an account executive for plaintiff); and (4) defendant's reply memorandum supported by a supplemental affidavit of Hector Santiago.

Plaintiff is an Illinois corporation, maintains a plant in Rolling Meadows and manufactures graphic design equipment. Defendant is a Puerto Rico corporation with its only place of business in Puerto Rico and is engaged in the business of computer graphics, computer printing and advertising.

The contract dispute is based upon an alleged default in an agreement (hereinafter agreement) for the purchase of equipment dated in March 1992 wherein D.S. America, Incorporated, is the seller and defendant is the buyer. The agreement is on the letterhead of "SCREEN (USA)," which then lists "DS America Incorporated" with its address in Rolling Meadows. The agreement provides for defendant to purchase three pieces of certain computer hardware and software: one omega link, one ECR electronic color retoucher and one expanded

memory 669MB external. The contract price totaled $120,000 and revealed a balance due of $36,000 to be paid 15 days after completion of installation. In the instant action, plaintiff seeks to obtain the $36,000 as yet unpaid.

The agreement further provides "FOB [freight on board] Rolling Meadows, Ill." and a handwritten note which states "one additional week of training at New Jersey included." Under the handwritten note appears the signature of Carlos Cruz (defendant's president) and the initials of E. Kennedy (plaintiff's salesman).

The agreement lists E. Kennedy as the sales representative and bears a typed date of March 20, 1992. Cruz, as defendant's president, signed the agreement on March 25, 1992. Kunio Tamaru, as president of D.S. America, Incorporated, signed the agreement on March 31, 1992.

In June 1990 defendant purchased from plaintiff a "dot generator color scanner" (scanner) for the price of $194,500. The purchase agreement for this sale (which is not the subject of the instant contract action) lists plaintiff's address and the freight on board designation (FOB) in Rolling Meadows, Illinois.

According to the affidavit of Edward S. Kennedy, a salesman for plaintiff, in September 1990, Bob Breedlove, an employee of defendant, telephoned plaintiff's offices in Fairfield, New Jersey, to inquire about an electronic color retouching system (referred to as ECR but apparently not one of the products included in the now-contested agreement) which could interface with the scanner that was purchased in June 1990. Breedlove's call was routed to Edward Kennedy, who worked in the New Jersey office as the account executive in charge of ECR sales for plaintiff.

Kennedy further attested that in September 1991 he placed two telephone calls to Breedlove at defendant's office in Puerto Rico to respond to Breedlove's inquiries about the ECR system. During these phone conversations, Breedlove reiterated defendant's interest in purchasing an ECR system to interface with defendant's scanner. Kennedy then sent pricing information to Breedlove. Thereafter on September 30, 1991, Kennedy visited defendant's offices in Puerto Rico to further discuss defendant's possible purchase of an ECR system.

According to the affidavit of Cruz, the president of defendant, defendant never contacted plaintiff in Illinois or New Jersey to seek to enter into contractual relations and never corresponded in any way with plaintiff to initiate any negotiation concerning the subject matter of this litigation. Cruz maintained that Kennedy's sales call at defendant's offices in Puerto Rico on September 30, 1991, was

unsolicited. At that time, Cruz and Santiago, an employee of defendant, met with Kennedy, who suggested that defendant needed a retouching system. Kennedy invited Santiago to visit a customer's facility in Florida and plaintiff's facility in Rolling Meadows for sales demonstrations.

Santiago attested that he is employed by defendant as the supervisor of the scanning and retouching department. Santiago's duties include meeting with computer salesmen and making plant visits to inspect and view demonstrations of computer hardware and software. Santiago, in his affidavit, then repeated the statements made by Cruz in his affidavit concerning Kennedy's visit in Puerto Rico on September 30, 1991.

According to Kennedy's affidavit, in October 1991 Santiago traveled to plaintiff's facilities in Rolling Meadows and met with Kennedy for two days. Santiago inspected plaintiff's facilities and Kennedy introduced the ECR system which is the subject of the instant lawsuit. Santiago engaged in price negotiations with Kennedy concerning the ECR system after a demonstration of the product. Kennedy proposed three different configurations of the equipment with three different corresponding prices for Santiago to bring back to and discuss with his employers.

Kennedy further attested that Santiago, while at the Rolling Meadows facility, also examined a horizontal process camera and discussed terms related to its purchase. About one week later, on November 11, 1991, defendant signed a purchase agreement for the horizontal camera (also not a part of the agreement which is the subject matter of plaintiff's complaint).

Cruz, in his affidavit, acknowledged that Santiago went to plaintiff's facility but maintained that Santiago was not authorized to enter into any purchase agreement or any negotiations regarding the purchase of any computer hardware or software.

Santiago attested that in October 1991 he went to Florida and Rolling Meadows for a sales demonstration of plaintiff's product. Santiago further declared that during this trip, he did not engage in any price negotiations and no sales or purchase terms were negotiated. Santiago expressed no interest in purchasing anything from plaintiff and characterized the trip as merely informational in nature. Santiago further stated that he was not authorized to enter into any purchase agreement or to conduct any negotiations. In his supplemental affidavit, Santiago stated that he would not have traveled to Illinois or visited plaintiff's facilities if it had not been for Kennedy's unsolicited invitation and that any mention of price during the trip was unsolicited and volunteered by Kennedy.

Kennedy next attested that in early January 1992 and again on March 25, 1992, he visited defendant's offices in Puerto Rico. During his visit, Kennedy engaged in further discussions with Santiago and Cruz concerning the sale of the ECR system. On March 25 Cruz signed the purchase agreement and handed it to Kennedy, who in turn delivered it on March 31 to Kunio Tamaru, the president of plaintiff, in New Jersey. Tamaru signed the agreement on March 31, 1992.

Cruz agreed that Kennedy made a sales call in Puerto Rico on March 25, 1992, and met again with Cruz and Santiago. Defendant, according to Cruz, did not initiate this March sales call during which Kennedy attempted to sell the computer package previously shown to Santiago in Rolling Meadows. Cruz attested that during the March sales call, the first negotiations occurred between the parties concerning computer equipment, price, shipment and payment terms. During these negotiations, Kennedy telephoned his office in New Jersey to obtain authorization for the sale. As a result of the telephone call, Kennedy agreed to the negotiated sales price and Cruz signed the contract which Kennedy then kept.

In his affidavit, Santiago concurred that Kennedy made a sales call on March 25, 1992, and again met with Cruz and Santiago. Santiago maintained that this sales call was unsolicited by defendant and that Kennedy then attempted to sell the computer equipment which Santiago had seen in Rolling Meadows. In his supplemental affidavit, Santiago added that the down payment on the ECR system was given to Kennedy at defendant's office in Puerto Rico and further payments were made to plaintiff at its New Jersey office.

Kennedy attested that the parties entered into the subject purchase agreement as a result of Breedlove's initial inquiry and the ensuing negotiations between Kennedy and defendant in Rolling Meadows and Puerto Rico.

Cruz attested that he had no meetings in Illinois with plaintiff to negotiate the terms of the agreement at issue and that all negotiations with plaintiff were conducted in Puerto Rico.

Santiago attested that his "only contact with the [S]tate of Illinois was the sales demonstration which took place on October 30, 1991." Santiago denied contacting plaintiff in Illinois to seek to enter into a contract and denied having any meetings in Illinois with plaintiff to negotiate the terms of the agreement now at issue.

On November 25, 1992, plaintiff filed a complaint against defendant to recover an unpaid balance of $36,000 based on the agreement. Eventually defendant filed a motion to dismiss plaintiff's complaint for want of personal jurisdiction.

On May 17, 1993, following a hearing, the trial court entered an

order granting defendant's motion to dismiss, finding that it lacked personal jurisdiction over defendant and dismissing defendant from the proceeding with prejudice. Thereafter plaintiff filed a motion for reconsideration. After a hearing, the trial court denied plaintiff's motion for reconsideration and modified its May 17 order to provide that the dismissal order was based solely on want of personal jurisdiction and "shall not serve as a dismissal on the merits or as a bar to other proceedings in other jurisdictions." Plaintiff then filed the instant appeal.

■ An Illinois court can obtain *in personam* jurisdiction over a nonresident through our long-arm statute set out in section 2—209. (*E.A. Cox Co. v. Road Savers International Corp.* (1995), 271 Ill. App. 3d 144, 148, 648 N.E.2d 271; 735 ILCS 5/2—209 (West 1992).) The plaintiff carries the burden of establishing a *prima facie* showing that jurisdiction over the defendant could be exercised. *Cox*, 271 Ill. App. 3d at 148, citing *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360; *cf. Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 24-25, 562 N.E.2d 989 (the party asserting *in personam* jurisdiction bears the burden of establishing such jurisdiction by a preponderance of the evidence).

To determine whether the plaintiff has met its burden of establishing a *prima facie* case for *in personam* jurisdiction, all undenied well-pleaded allegations in plaintiff's complaint and unrebutted facts alleged in an affidavit are accepted as true while any conflicts in the affidavits and pleadings will be resolved in favor of the plaintiff. *Cox*, 271 Ill. App. 3d at 148; *Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 895, 491 N.E.2d 39.

■ Based upon provisions of the long-arm statute, plaintiff advances two separate grounds for the exercise of personal jurisdiction over defendant in Illinois. First, plaintiff relies on any of three acts enumerated in subsection (a), which provides in relevant part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

\* \* \*

(7) The making or performance of any contract or promise substantially connected with this State;

\* \* \*

(10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired." (735 ILCS 5/2—209(a)(1), (a)(7), (a)(10) (West 1992).)

Where jurisdiction is based upon subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. 735 ILCS 5/2—209(f) (West 1992).

Second, plaintiff relies on subsection (c) alone, which provides:

"(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209(c) (West 1992).

Although some authority supports plaintiff's proposition that subsections (a) and (c) operate as two separate grounds for the exercise of personal jurisdiction over a nonresident defendant (*G.M. Signs, Inc. v. Kirn Signs, Inc.* (1992), 231 Ill. App. 3d 339, 342, 596 N.E.2d 212; *Czarobski v. St. Kieran's Church* (N.D. Ill. 1994), 851 F. Supp. 1219, 1220-21), we need not reach such a conclusion in the present case because we find that jurisdiction lies under section 2—209(a)(1) and that the exercise of jurisdiction comports with the State and Federal Constitutions. Moreover, since we find that jurisdiction lies under section 2—209(a)(1), we need not address the alternative grounds delineated in sections 2—209(a)(7) and 2—209(a)(10).

■ A single meeting between an agent of a nonresident defendant and an Illinois plaintiff may be sufficient to constitute the transaction of business for purposes of jurisdiction under the long-arm statute. (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272; *Kropp Forge Co. v. Jawitz* (1962), 37 Ill. App. 2d 475, 186 N.E.2d 76.) "The focus of our inquiry is not upon the amount of commercial activity occurring between the parties outside of Illinois, but rather, it is upon the defendant's activities within this State and whether those activities are sufficient to subject it to the *in personam* jurisdiction of the Illinois courts." (*Cox*, 271 Ill. App. 3d at 150.) In *Conductron* the sole meeting in Chicago preceded the execution of the subject purchase agreement by about one month. *Conductron*, 69 Ill. App. 3d at 853.

Similarly, in another action for contract damages, this court in *Kropp Forge* held that the nonresident defendant buyer transacted business in Illinois by visiting the plaintiff seller's plant in Illinois. (*Kropp Forge*, 37 Ill. App. 2d at 481.) We found:

"Either the making of the alleged contract itself, or the activity in furtherance of it, while defendant was physically present in Il-

linois, is the business shown to have been transacted by defendant within Illinois ***. Defendant, by his acts done in Illinois, purposefully availed himself of the privilege of conducting business activities within this state, 'thus invoking the benefits and protections of its laws.' " *Kropp Forge*, 37 Ill. App. 2d at 481, quoting *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.

■ Like *Conductron* and *Kropp Forge*, we find that the present defendant transacted business in Illinois within the meaning of section 2—209(a)(1). Defendant's attempt to minimize Santiago's two-day presence at plaintiff's plant in Rolling Meadows as merely informational is unpersuasive. Santiago was employed as defendant's supervisor of the scanning and retouching department, sent by defendant to inspect certain products which ultimately became the subject of the agreement at issue and entrusted with conveying pricing information. Santiago's importance in the negotiation of the agreement and his indispensable approval are further supported by his presence and participation in the discussions after his meetings in Illinois where he inspected the products and obtained various price configurations. See also *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 154, 445 N.E.2d 371 ("[w]hat is important is that defendant voluntarily entered into a business transaction with an entity he knew, or should have known, was an Illinois resident").

Since we find that a *prima facie* basis for jurisdiction lies under section 2—209(a)(1), we must next consider whether the exercise of that jurisdiction comports with the due process clauses of the Federal Constitution (U.S. Const., amend XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 2). *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 275, 565 N.E.2d 1302.

■ Federal "[d]ue process is satisfied when the defendant's contacts with the forum State make it reasonable for it to anticipate being called to account in that jurisdiction." (*Cox*, 271 Ill. App. 3d at 150, citing *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) Three criteria are considered in determining whether the Federal due process standards are satisfied: (1) whether the nonresident defendant has minimum contacts within the forum State such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum State; and (3) whether it is reasonable to require the defendant to litigate in the forum State. *Autotech Controls Corp. v. K.J. Electric Corp.* (1993), 256 Ill. App. 3d 720, 725, 628 N.E.2d 990, citing *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-84.

▮ Here the exercise of jurisdiction comports with Federal due process as this court found in *Conductron* and *Kropp Forge* based on the single act of negotiating by the nonresident while physically present in the forum State. (*Conductron*, 69 Ill. App. 3d 847; *Kropp Forge*, 37 Ill. App. 2d 475.) For purposes of Federal due process, defendant purposefully and sufficiently directed its activities in Illinois by personally visiting Illinois, seeking its product and ultimately purchasing its product.

Our State due process guarantee requires that jurisdiction "be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 141 Ill. 2d at 275.

We believe that the due process guarantees of the Illinois Constitution are not offended by the exercise of jurisdiction over defendant in the present case. The record reveals that defendant purchased products from plaintiff's facility in Rolling Meadows, Illinois, prior to the agreement at issue. Without Santiago's visit to plaintiff's plant in Illinois, approval of plaintiff's product, and participation in subsequent contractual discussions, the subject agreement allegedly would not have been accomplished.

For all the foregoing reasons, we reverse the trial court's order which granted defendant's motion to dismiss for want of jurisdiction and remand for further proceedings consistent with this decision.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.