**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190036-U

Order filed August 19, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| TIMOTHY W. TESDAL, TRACY R. BRANDT, DOUGLAS L. BRANT, TODD D. TESDAL, TINA V. SOBOTTA, RICHARD SOBOTTA, | ) ) ) ) ) | Appeal from the Circuit Court of the Thirteenth Judicial Circuit, Grundy County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| THOMAS T. TESDAL, CHERYL TESDAL, TERRY M. AMERMAN, individually, TERRY M. AMERMAN, as Successor Trustee of the Margaret H. Tesdal Trust, | ) ) ) ) ) | Appeal No. 3-19-0036 Circuit No. 2013-CH-235 |
| Defendants-Appellees, | ) ) | |
| and the FIRST MIWEST BANK, as Trustee Under TRUST NO. 652, | ) ) ) | The Honorable Robert C. Marsaglia, Judge, presiding. |
| Additional Defendant. | ) ) | |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justice LYTTON and Justice HOLDRIDGE concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court did not err in granting Defendants' motion for summary judgment because there was no genuine issue of material fact as to whether the successor trustee exceeded her authority in signing the assignment of interest to her co-defendant brother.

¶ 2     Tina Sobotta brought this declaratory judgment action, on behalf of herself and her younger siblings ("Plaintiffs"), to enjoin her brother Tom Tesdal and sister Terry Amerman ("Defendants") from enforcing an assignment of property. The property at issue is 20-percent beneficial interest in a land trust formerly held in their parents' name and allegedly promised to Tom and his wife Cheryl as part of a structured payment agreement with his parents. After the parents' death, Terry, acting as successor trustee to her parents, assigned the interest to Tom. Plaintiffs filed suit claiming that the assignment was an invalid exercise of the trustee's power. The trial court granted summary judgment on behalf of defendants. For the following reasons, we affirm the court's decision.

¶ 3                                         BACKGROUND

¶ 4     In 1983, Wayne K. and Margaret H. Tesdal ("Tesdal Parents" or "parents"), with the aid of their three eldest children—Tom Tesdal, Terry Amerman, and Tina Sobotta—purchased the property known as the "Nettle Creek Farm." The purchase price of approximately $570,000 was financed with a note and mortgage from the First National Bank of Morris. The farm was held in an Illinois Land Trust, Trust #652. The Tesdal Parents held 60-percent beneficial interest in the property. Terry Amerman and Tina Sobotta each assumed a 20-percent beneficial interest. The Tesdal Parents and their daughters were responsible for a *pro rata* share of the mortgage and related interests and taxes equal to their interest. Accordingly, Terry Amerman and Tina Sobotta, each with their respective spouses, would pay 20 percent of all related costs, and the Tesdal Parents would pay 60 percent.

¶ 5       Tom Tesdal was unable to sign the note because he was an officer of the financing bank. Instead, he and Cheryl executed a written agreement with the Tesdal Parents in March 1983. They agreed that Tom and Cheryl would make a lump sum payment of $114,000, plus interest, and a 20-percent share of the total real estate taxes. In consideration, the Tesdal Parents agreed to assign a 20-percent beneficial interest in Trust #652 to Tom and Cheryl to be drawn from the 60 percent retained by the Tesdal Parents. The parents would continue to pay the mortgage as previously discussed, but under the 1983 agreement, Tom and Cheryl would reimburse them annually for said costs. The parties continued to make payments on the note under the 1983 agreement until 2008 when both Tesdal Parents died.

¶ 6       James Hearns acted as the Tesdal family accountant during the 25 years following the purchase. He first met with them in 1983 to discuss Trust #652 and how to report the farm income. He submitted an affidavit, stating that all the relevant parties "knew and understood that Tom and Cheryl Tesdal owned 20 [percent] of the farm." In 1984, he prepared a partnership return which showed that Tom and Cheryl had 20-percent beneficial interest in the farm. He also stated that he met "simultaneously" with the three siblings, their respective spouses, and the Tesdal Parents "to prepare all their tax returns" from 1986 until the parents passed away in 2008. He relied on the yearly farm report which showed that each sibling owned 20-percent beneficial interest jointly with his or her spouse. Finally, he stated that Tina Sobotta was aware of the transactions between her parents and Tom and that she "in fact participated in [said] transactions since 1983."

¶ 7       In 2005, Tom, his sister Tina Sobotta and their respective spouses increased the loan on the property by $116,000. That sum was shared equally between the two separate couples for their respective children's educational expenses. The Tesdal Parents and Terry Amerman had no

3

responsibility for any portion of the additional payments. Also in 2005, the Tesdal Parents' 60 percent was transferred into the Margaret H. Tesdal Trust. Margaret Tesdal was the sole trustee of this trust. The trust directed distribution to Margaret's six children equally *per stipes*.

¶ 8      Wayne died on January 24, 2008, and Margaret hired John Rooks to represent her in the administration of Wayne's estate. Rooks testified that he was aware of the purchase of Nettle Creek Farm, the loan with First National Bank of Morris and Trust #652. Margaret informed him that she owned 40-percent beneficial interest of Trust #652 and that she held 20-percent as "nominee" for Tom and Cheryl. He understood the agreement between the Tesdal Parents and their son as placing Tom and Cheryl's 20-percent beneficial interest in an escrow account held by the Hynds Law Firm.

¶ 9      Rooks became aware of the Margaret H. Tesdal Trust in January 2008. This trust was executed on May 27, 2005, and named Terry Amerman as successor trustee in case of, among other things, Margaret's death. Article V of the trust stated that "the trustee shall have the powers enumerated in the Illinois Trust and Trustees Act." Rooks testified that Margaret told him that 20 percent of the beneficial interest in Trust #652 and held in her trust was owned by Tom and Cheryl. He noted that the Margaret H. Tesdal Trust required that an assignment be "lodged" with the trustee to perfect a transfer of interest, but that had not been done as of January 2008. At Margaret's request, Rooks prepared an assignment transferring the 20-percent beneficial interest in Trust #652, held in the Margaret H. Tesdal Trust, to Tom and Cheryl on August 2, 2008. Margaret became ill that same month and died on November 3, 2008, having never signed the document and having had no further contact with Rooks.

¶ 10      Rooks spoke to Tom about the assignment prior to August 5, 2008, and mailed him the prepared document on August 5, 2008. In December 2008, Rooks met with Terry Amerman who

4

had become the administrator of her mother's estate. He met with her again at a second meeting where Tom was present to discuss the farm's operation; at that meeting, Amerman signed the assignment to Tom and Cheryl. This transfer was never discussed with the other siblings. Rooks said that Margaret clearly considered Tom and Cheryl to be silent partners in the farm. Margaret considered herself a place holder for Tom and Cheryl because they could not be on the record with the bank. There are no other documents to indicate this relationship.

¶ 11 Terry Amerman stated that the Tesdal family received a yearly "recap sheet" from Hearns regarding the farm's accounting. Her parents and brother Tom had always indicated to her that he had a 20-percent beneficial interest in the farm. Amerman stated that the interest was communicated to her siblings in December 2008. On December 17, 2008, she executed the assignment prepared by Rooks. Rooks stated that he believed the assignment to be a ministerial act which Amerman had to perform. He also noted that Tom and Cheryl had taken out a bank loan which released Margaret Tesdal from their 20-percent share of the debt on the farm. He explained that this was done in exchange for the assignment.

¶ 12 Sobotta stated that she always thought that Tom had a 20-percent beneficial interest in the farm. She noted that it was common knowledge. But she was never asked if she agreed that Tom and Cheryl were entitled to that interest. She acknowledged that her parents did not keep her involved in their financial affairs. However, the escrow agreement between her parents and Tom was listed in the inventory of Wayne Tesdal's lockbox. Sobotta attended a family meeting at First Midwest Bank in January 2009 and another meeting at Rooks' office in July 2009. She also received many emails from Amerman. However, no one told her that Tom Tesdal was entitled to a 20-percent interest at any meeting.

¶ 13    Tom confirmed that he did not sign the original note because of his position as an officer of the bank. He explained that the Tesdal family was able to obtain a preferred interest rate which he was not able to receive. He instead executed the written escrow agreement with his parents. The agreement required that he pay $114,000 by March 15, 1984, but he failed to meet this deadline. Instead, the agreement was verbally modified by his parents. Tom explained that he met his obligations under the new agreement by paying 20-percent of the amounts due on the bank note each year. He believed that his obligations were completed when he signed a note in which he undertook debt that satisfied his mother's obligation on the farm. Tom stated that he did not coerce or convince Terry Amerman to sign the assignment.

¶ 14    After discovering the assignment of interest, plaintiffs initiated this action in December 2013. They requested that the 20-percent removed be redistributed equally among all the children of the Tesdal Parents. They argued that Tom's failure to meet the original deadline in the 1983 escrow agreement was a forfeiture of his interests.

¶ 15    Defendants filed a motion for summary judgment, which the trial court granted. The court concluded: (1) that the matter was complicated by the Tesdal Parents' failure to modify the 1983 agreement, (2) that the parents never took any action to enforce the agreement, and (3) that the agreement demonstrated the parents' continuing intention that Tom and Cheryl become owners of a 20-percent interest in the farm. The court then found that the 20-percent assignment gave Tom and Cheryl "exactly what they paid for and in the exact same manner as did" Terry Amerman and Tina Sobotta. The court ruled that "Terry Amerman's actions as successor trustee in transferring the interest were made reasonably upon reliance on affidavit, certificate, letter, or other evidence reasonably believed to genuine and on the basis of such evidence the transfer was made in good faith." Therefore, the court held that "there [was] no genuine issue of material fact

6

that Thomas and Cheryl Tesdal were owed that 20-percent interest held by Thomas's mother at the time of her death."

¶ 16   Plaintiffs now appeal the trial court's order.

¶ 17              ANALYSIS

¶ 18   Summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2019). The case must hinge on a question of law, and the moving party's right to summary judgment must be "clear and free from doubt." *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993). The record is construed strictly against the movant and liberally for the nonmovant, and the trial court's ruling is reviewed *de novo*. *Jackiewicz v. Village of Bolingbrook*, 2020 IL App (3d) 180346, ¶ 23.

¶ 19   Like the trial court before us, we are tasked with deciding whether Terry Amerman exceeded her authority as the successor trustee in transferring the 20-percent interest to Tom and Cheryl. We hold that there is no genuine issue of material fact that Terry did not exceed her authority under the Illinois Trust and Trustees Act in effect at the time she became Trustee of the Margaret H. Tesdal Trust. Article V of the trust expressly grants the trustee "the powers enumerated in the Illinois Trust and Trustees Act." Under the Act, a trustee is authorized to "rely upon an affidavit, certificate, letter, or other evidence reasonably believed to be genuine and on the basis of any such evidence to make any payment or distribution in good faith without liability." 760 ILCS 5/4.17, repealed, 2019 P.A. 101-48, § 1505 (eff. Jan. 1, 2020). In addition, a trustee is empowered to "compromise, contest, prosecute or abandon claims or other charges in

favor of or against the trust estate." 760 ILCS 5/4.11, repealed, 2019 P.A. 101-48, § 1505 (eff. Jan. 1, 2020).

¶ 20 The undisputed evidence in this case showed that when the Tesdal Parents purchased the farm in 1983, there was an agreement that the three siblings would have equal interests in the farm and share equal obligation for the mortgage and bank note. First, because of Tom's inability to participate in the loan, an enabling agreement between the parents and Tom was memorialized and signed in March 1983, granting them a 20-percent interest in exchange for Tom and Cheryl assuming a 20-percent payment obligation to the Tesdal Parents. Second, the lead plaintiff—Tina Sobotta— noted that Tom's 20-percent interest in the farm was common knowledge. Her parents' accountant, James Hearns, confirmed this common knowledge and stated that all the relevant parties "each knew and understood that Tom and Cheryl Tesdal owned 20 [percent] of the farm. Finally, all parties—including Tom and Cheryl—made payments on the note under the 1983 agreed schedule until 2008. The only recorded deviation from the agreed schedule occurred after Tom and Tina agreed to increase the loan on the property by $116,000.

¶ 21 Plaintiffs do not dispute that the 1983 agreement was executed or that the parties acted as if it was binding on them. Instead, plaintiffs argue that the agreement was void and unenforceable because it violated federal banking laws. We need not address this issue, however, because Tom entered into the agreement with his parents, in his individual capacity and not as a bank official. The 1983 agreement is a contract between private parties and involved no financial institution. In fact, Tom testified that he and Cheryl executed the agreement because he could not sign the bank note and incur the mortgage, because his direct participation in the financing would have affected his family's ability to obtain preferred interest rates. Thus, whereas his sisters and parents were parties to the mortgage and bank note, Tom and Cheryl's 20-percent beneficial

8

interest was derived from his parents' initial 60-percent beneficial interest in exchange for his promise to assume commensurate payment obligations on the purchase price.

¶ 22    Plaintiffs next argue that Tom and Cheryl forfeited their interest by failing to pay off the initial lump sum by March 15, 1984. They contend that the 1984 oral agreement to modify the initial 1983 agreement—if ever executed—is unenforceable because it was not memorialized and is unsupported by evidence. Generally, whether a written agreement was modified by a subsequent oral agreement "is a question of fact to be determined by the fact finder." *Janda v. U.S. Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 62. "'However, if after consideration of the extrinsic evidence, the court determines that reasonable men could reach only one conclusion, the issue can be decided by the court as a matter of law.'" *Id.* (quoting *E.A. Cox Co. v. Rd. Savers Int'l Corp.*, 271 Ill. App. 3d 144, 152 (1995)). We find that the evidence presented supports only one reasonable conclusion: the parties bound or affected by the 1983 agreement continued to act as if the agreement had been properly extended by the 1984 modification.

¶ 23    First, the parties operated the farm and maintained payments of the mortgage in accord with the original agreement. Hearns, the family accountant testified that he relied on the yearly farm report to "simultaneously" prepare taxing reports showing Tom and Cheryl's 20-percent *pro rata* payments on the tax. The Tesdal Parents received reimbursement for 20 percent of all expenses paid on their nominal 60-percent obligation from Tom, which he and Cheryl reported as expenses on their tax returns. This arrangement lasted until the Tesdal Parents passed away in 2008. Hearns also averred that all the parties, including Tina Sobotta, were privy to and participants in this arrangement. All relevant parties were aware of the agreed payment arrangement and that payments between 1983 and 2008 were being made as previously agreed upon. In 2005, Tina Sobotta agreed with Tom to increase the mortgage on the farm and jointly

9

took on the payment obligation of this increase with him. Her decision supports the inference that she believed that Tom maintained an ownership interest in the property long after the initial deadline had passed.

¶ 24 Second, the Tesdal Parents continued to hold themselves bound by 1983 agreement. In fact, Tina Sobotta testified that Wayne Tesdal kept the agreement in his lockbox until his death almost 24 years after the initial deadline. Margaret Tesdal told Rooks that 20 percent of the beneficial interest in Trust #652 and held in her trust was owned by Tom and Cheryl. And third, Margaret directed Rooks to prepare an assignment document perfecting the transfer of beneficial interest. Rooks believed this document was required so that the assignment could be "lodged" with the trustee. Rooks prepared the document, but Margaret Tesdal fell ill and died before signing it. Despite this setback, Rooks believed that Terry Amerman's role in assigning the interest to Tom was "ministerial."

¶ 25                                  CONCLUSION

¶ 26 The judgment of the circuit court of Grundy County is affirmed.

¶ 27 Affirmed.