NOTICE

Decision filed 04/30/08. The text of
this decision may be changed or
corrected prior to the filing of a
Petition for Rehearing or the
disposition of the same.

NO. 5-05-0516

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| KORTE & LUITJOHAN CONTRACTORS, INC., | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) Montgomery County. |
| | ) |
| v. | ) No. 02-CH-34 |
| | ) |
| THIEMS CONSTRUCTION COMPANY, INC., | ) |
| | ) |
| Defendant-Appellant and Cross-Appellee, | ) |
| | ) |
| and | ) |
| | ) |
| THE DEPARTMENT OF TRANSPORTATION, | ) Honorable |
| | ) Mark M. Joy, |
| Defendant-Appellee and Cross-Appellee. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Korte & Luitjohan Contractors, Inc., filed a three-count complaint against the Illinois Department of Transportation (IDOT) and Thiems Construction Company, Inc. (defendant), in the circuit court of Montgomery County. The circuit court dismissed the claim against IDOT, entered a summary judgment for defendant on plaintiff's claims for breach of contract, and awarded plaintiff interest for late payment. Defendant appealed and plaintiff cross-appealed. The appeals raise issues regarding (1) whether IDOT is a proper party, (2) whether the circuit court erred by entering a summary judgment in favor of defendant on the claim for breach of contract, and (3) whether the circuit court erred by awarding interest to plaintiff for an improper retainage. We affirm in part and reverse in part.

1

FACTS

Defendant, a general contractor, won a bid for the construction of a highway project. Defendant then subcontracted with plaintiff to excavate a trench, supply trench backfill, and install a sewer pipe. The parties entered into a contract requiring them to abide by the plans and specifications set forth in the general contract between defendant and IDOT. The contract between plaintiff and defendant contained additional terms addressing such issues as the distribution of payments, which we will discuss.

Plaintiff filed suit against IDOT and defendant. Plaintiff alleged a breach of contract and a violation of the State Prompt Payment Act (30 ILCS 540/0.01 *et seq.* (West 2000)) and sought to foreclose a lien on public funds. Pursuant to a motion to dismiss, the trial court dismissed IDOT as a party. Plaintiff and defendant each filed a motion for a summary judgment on the breach-of-contract claim underlying the first two counts of the complaint. The court found that plaintiff was not entitled to payment for the material delivered and installed in excess of the contract amount, and the court granted a summary judgment to defendant on the claim of a breach of contract. Later, the court held a hearing on the remaining count for late payment. The court found that defendant had improperly retained payments on amounts due, and the court awarded interest pursuant to the State Prompt Payment Act. The end result was that the court ruled in favor of defendant on the claim of a breach of contract but ordered defendant to pay interest to plaintiff for amounts that had been retained until the completion of the project.

Defendant appealed, and plaintiff cross-appealed, naming IDOT as a party.

ANALYSIS

I. IDOT

The initial issue is whether IDOT was a proper defendant before the circuit court. In count I of its complaint, plaintiff sought to foreclose a lien on public finds and named

2

IDOT as a defendant. Plaintiff requested "that IDOT be ordered and directed to pay to the plaintiff the amount found due with interest and costs." On appeal, plaintiff contests the court's dismissal of IDOT as a party. We conclude that the dismissal was appropriate.

The State of Illinois may be named as a defendant in only a few limited circumstances. The State Lawsuit Immunity Act provides a general bar, with limited exceptions, to naming the State as a defendant. 745 ILCS 5/1 (West 2004). One of those exceptions is for claims founded on a contract entered into with the State. 745 ILCS 5/1 (West 2004); see 705 ILCS 505/1 *et seq.* (West 2004) (the Court of Claims Act). Even for those contract claims, however, the court of claims has exclusive jurisdiction. 705 ILCS 505/8(b) (West 2004).

Plaintiff erroneously contends that IDOT is a proper party under the Mechanics Lien Act (Act) (770 ILCS 60/0.01 *et seq.* (West 2004)). Indeed, section 23(c) of the Act provides a mechanism for a party to file a lien against public funds. 770 ILCS 60/23(c) (West 2004). Under the procedure outlined in section 23(c), a lienholder is required to give notice to the contractor having the contract for public improvement and the director of the State agency whose duty it is to let the contract. 770 ILCS 60/23(c) (West 2004). The director is required to withhold a sum sufficient to cover the claim until the matter is adjudicated. 770 ILCS 60/23(c) (West 2004). The lienholder is directed to file suit, but the State is not to be a party defendant. 770 ILCS 60/23(c) (West 2004); see *In re Guerra Construction Co.*, 142 B.R. 826, 830 (Bankr. N.D. Ill. 1992). At the relevant time, section 23(c) provided as follows:

"The person so claiming a lien shall, within 90 days after giving such notice, commence proceedings by complaint for an accounting, making the contractor having a contract with the State and the contractor to whom such material, apparatus, fixtures, machinery[,] or labor was furnished[] parties defendant[] and shall, within the same period[,] notify the Director of the commencement of such suit by

3

delivering to him a copy of the complaint filed \*\*\*." 770 ILCS 60/23(c) (West 2004).

Plaintiff provides no basis to bring IDOT before the circuit court. The cases cited by plaintiff concern the liability of municipalities, not the State of Illinois. See *Consolidated Construction Co. v. Malan Construction Corp.*, 42 Ill. App. 2d 272, 277, 192 N.E.2d 263, 266 (1963); *Board of Library Trustees of the Village of Westmont v. Cinco Construction, Inc.*, 276 Ill. App. 3d 417, 422, 658 N.E.2d 473, 477 (1995). In contrast, section 23 specifically limits lawsuits against the State, and its officers, to claims of a derogation of an official duty. Section 23(d) allows the director of the State agency to be named as a party in circuit court only if he violates the duties outlined in section 23(c)–namely, failing to set aside sufficient funds to cover the lien. 770 ILCS 60/23(d) (West 2004). Plaintiff made no such allegation. In the absence of any allegation that the State, or its agent, violated a duty to set aside funds in accordance with section 23(c), the State was not a proper party.

## II. Contract

Plaintiff contends that the trial court erred by granting a summary judgment for defendant for its performance of the contract. The interpretation of a contract is generally a matter to be determined by the court as a matter of law. *People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 223, 843 N.E.2d 259, 268 (2006). The terms and conditions of a contract are enforced as they appear, and they control the rights of the parties. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 465, 786 N.E.2d 1010, 1016 (2003).

Plaintiff contends that defendant was obligated to pay for the entire amount of trench backfill that was delivered. Plaintiff delivered 3,546.28 cubic meters of trench backfill. The trial court found that defendant was obligated to pay for only 2,554.80 cubic meters.

At issue is the meaning of IDOT's "Standard Specifications for Road and Bridge

4

Construction" (Illinois Department of Transportation, Standard Specifications for Road and Bridge Construction (1997) (IDOT Standard Specifications)), which were incorporated into the contract. In particular, the resolution of this matter requires an application of section 208.03(b) of the IDOT Standard Specifications:

> "**208.03 Method of Measurement.**
>
> \*\*\*
>
> (b) Measured Quantities. Trench backfill shall be furnished for backfilling to the full width of the trench. It will be measured in cubic meters (cubic yards) in place, except that the quantity for which payment will be made shall not exceed the volume of the trench as computed by using the maximum width of trench permitted by the Specifications and the actual depth of the completed trench backfill above the center of the pipe, with a deduction for the volume of one-half of the pipe. Any trench backfill required in excess of the maximum quantity specified shall be furnished by the Contractor at his/her own expense." IDOT Standard Specifications, §208.03(b).

Plaintiff contends that the standard specifications for storm sewers did not establish a maximum width for the trench, and it argues, thus, that the exception described in section 208.03 does not apply and that, therefore, defendant is liable for all the backfill in place. The standards for the excavation and foundation of storm sewer trenches are set forth in section 550.04 of the IDOT Standard Specifications. Section 550.04 provides as follows:

> "**550.04 Excavation and Foundation.** The trench shall be excavated to an elevation 100 mm (4 in.) below the bottom of the pipe and so that the flow line of the finished sewer will be at the depth or grade specified or established by the Engineer. For trench depths of less than 1.5 m (5 ft.) and when sheeting or shoring is not required, the trench *shall* be excavated 450 mm (18 in.) wider than the external

5

diameter of the pipe to permit thorough tamping of the foundation material under the haunches and around the pipe. For trench depths of 1.5 m (5 ft.) or more and when sheeting or shoring is required, the trench width *shall* be 1 m (3 ft.) wider than the external diameter of the pipe. The trench shall be excavated so that the vertical faces are maintained at least to the elevation of the top of pipe." (Emphasis added.) IDOT Standard Specifications, §550.04.

Plaintiff contends that the use of the auxiliary verb *shall* in section 550.04 forms an imperative for a minimum width for trenches for storm sewers, and it asserts that IDOT would have used different language if it had intended to establish a maximum. For example, in section 542.04(b) of the IDOT Standard Specifications, IDOT specifies that trenches for pipe culverts shall be excavated "to a specified width on each side of the pipe *** of not more than" delineated measurements. IDOT Standard Specifications, §542.04(b). For support, plaintiff turned to testimony from Brian Petty, an engineering technician on the project, comparing the language of section 550.04 to other provisions and concluding that section 550.04 establishes only a minimum.

As the trial court pointed out, however, the absence of the singularly limiting language found in other IDOT standard specifications does not mean section 550.04 fails to establish a maximum width. Using an analogy to prove the converse, the trial court pointed out that IDOT uses different language if it is trying to establish only a minimum. For example, section 601.03 provides that for pipe drain installation "the trench shall have a width of not less than the external diameter of the pipe plus 450 mm (18 in.)." IDOT Standard Specifications, §601.03. We conclude that section 550.04 does more than prescribe a minimum width.

A comparison to other IDOT specifications makes clear that section 550.04 is not meant as only a minimum or only a maximum; however, this does not mean that the

6

dimensions provided in section 550.04 are advisory. We are still left with the auxiliary *shall*, and we cannot avoid this language. Applying the analysis advised by plaintiff would lead us to the conclusion that the lack of more concrete language singularly expressing a minimum or maximum means that section 550.04 provides neither. This would, however, leave the use of the term *shall* nugatory, and a fundamental rule of linguistics and contract law is that every word should be given meaning. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 511, 840 N.E.2d 767, 784 (2005). The only other alternative is that the imperative is for both a minimum and a maximum. This is the result reached by the trial court. This reading is syntactically correct and does not contradict the forms for establishing only a minimum or only a maximum found in other provisions of the IDOT Standard Specifications.

The trial court's interpretation is a cohesive reading of the IDOT Standard Specifications. Section 208.03 calls for the computation of the "maximum width of trench" according to the specifications. Plaintiff fails to state what the maximum should be if section 550.04 is read to provide only a minimum. Reading section 550.04 as establishing a maximum, as well as a minimum, is consistent with and called for by section 208.03.

The record contains no evidence that section 550.04 is ambiguous in light of the custom or practice in road construction projects. Although plaintiff points to the testimony of Petty, the engineering technician, no reason is given to explain why custom or usage would prevent section 550.04 from being used as both a minimum and a maximum. Furthermore, Petty's testimony supports defendant in several ways. Petty testified that IDOT only pays for a maximum width. Petty also testified that, although IDOT does not measure the dig as it progresses, there were instances where plaintiff dug too wide. On appeal, plaintiff does not contest the computations relied on by the circuit court, nor does plaintiff contest the trial court's finding that tamping could be done within the prescribed width. The

7

trial court's finding that defendant was not liable for the excess was proper.

### III. Retainage

Defendant contends that the trial court erred by awarding interest on the retainage. The plain language of the contract called for defendant to immediately forward all sums received from IDOT, and the contract incorporated the requirements of the federal regulations. The contract provided as follows:

"In accordance to plans and specifications for IDOT Contract 92758, [defendant] [a]grees:

(a) To pay [plaintiff] in accordance with the items and prices as set out in paragraph 3-A.

(b) To immediately remit to [plaintiff] all sums received from the awarding body as payment for each item.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*See 3 [*sic*] & 4 [*sic*] on this page\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**To make final and complete payment on the above listed items**

**of work, including retainage, in accordance with the quantities**

**as determined by the awarding body.**

\* \* \*

(3) [*sic*] All certified weekly payrolls and Monthly Construction Employment/Man-hour Report (form SBE-956)[] must be completed correctly and submitted to [defendant].

(4) [*sic*] Required Contract Provisions Federal-Aid Construction Contracts [*sic*]."

First, the plain language of the contract prevents defendant from setting aside a retainage. The contract specifically provides that defendant is to "*immediately* remit to [plaintiff] *all sums received*" (emphasis added) from IDOT as the awarding body. The

8

contract implies that IDOT could retain an amount, but defendant was obligated to make a complete payment to plaintiff of the total amount it received. The payment to plaintiff, therefore, was based on the retainage by IDOT.

IDOT had indeed retained a part of the payment to defendant, resulting in defendant's obligation, by the contract cited above, to make a full and complete payment of all sums received from IDOT. The contract did not require defendant to make up from defendant's own funds the difference between IDOT's payment and the amount owed plaintiff. The trial court found that defendant had made a profit on the contract sufficient to cover the retainage. Because the payment from IDOT was sufficient to cover a complete payment to plaintiff, defendant was obligated to make an immediate and full payment. This finding does not comport with the contractual obligations cited above.

The trial court found that a federal regulation barred a retainage in payments to subcontractors. The regulation provided in part as follows:

"(a) You must establish, as part of your [Disadvantaged Business Enterprise] program, a contract clause to require prime contractors to pay subcontractors for satisfactory performance of their contracts no later than a specific number of days from receipt of each payment you make to the prime contractor. This clause must also require the prompt return of retainage payments from the prime contractor to the subcontractor within a specific number of days after the subcontractor's work is satisfactorily completed.

(1) This clause may provide for appropriate penalties for failure to comply, the terms and conditions of which you set.

(2) This clause may also provide that any delay or postponement of payment among the parties may take place only for good cause, with your prior written approval.

9

(b) You may also establish, as part of your [Disadvantaged Business Enterprise] program, any of the following additional mechanisms to ensure prompt payment:

(1) A contract clause that requires prime contractors to include in their subcontracts language providing that prime contractors and subcontractors will use appropriate alternative dispute resolution mechanisms to resolve payment disputes. You may specify the nature of such mechanisms.

(2) A contract clause providing that the prime contractor will not be reimbursed for work performed by subcontractors unless and until the prime contractor ensures that the subcontractors are promptly paid for the work they have performed.

(3) Other mechanisms, consistent with this part and applicable state and local law, to ensure that [Disadvantaged Business Enterprises] and other contractors are fully and promptly paid." 49 C.F.R. §26.29 (1999) (eff. March 4, 1999).

Defendant contends that the regulation did not control the obligations of the parties to the contract, and defendant focuses on the implementation of the regulation. Defendant contends there is no evidence that the contract was a part of a federal program and that, even if applicable, the regulation only required IDOT to establish a special provision not developed until after the parties had entered into the contract. As a general rule, the law in existence at the time a contract is entered into becomes a part of the understanding of the parties and thus a part of their agreement. *In re Estate of Dierkes*, 191 Ill. 2d 326, 337, 730 N.E.2d 1101, 1107 (2000). The regulation was published on February 2, 1999, and became effective on March 4, 1999. The contract had a letting date of March 5, 1999.

In this case, the incorporation of the federal regulation was not merely through the application of current law. Plaintiff did not have to offer testimony that the contract was a

part of a federal program. The contract specifically provided that the parties must fulfill any required contract provisions for federal aid construction contracts. The trial court found that withholding retainage was abolished beginning with the institution of the regulations. The regulation was addressed to IDOT, but the contract called for the parties to meet the standards for federal aid construction contracts. IDOT nevertheless retained funds, while defendant discharged its contractual obligation by forwarding all IDOT-received monies to plaintiff. The trial court's ruling would have the effect of penalizing defendant for IDOT's retainage procedures.

The trial court properly applied the State Prompt Payment Act, which provides for interest of 2% per month on late payments (30 ILCS 540/7 (West 2000)). The amount of interest awarded was properly calculated based on the trial court's determination of the amount defendant had failed to pay under the contract. Since, however, we have determined defendant paid all that it was obligated to pay, we reverse that part of the order.

CONCLUSION

Accordingly, the order of the circuit court is hereby affirmed in part and reversed in part.

Affirmed in part and reversed in part.

CHAPMAN and DONOVAN, JJ., concur.

11

NO. 5-05-0516

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| KORTE & LUITJOHAN CONTRACTORS, INC., | ) Appeal from the<br>) Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) Montgomery County.<br>) |
| v. | ) No. 02-CH-34<br>) |
| THIEMS CONSTRUCTION COMPANY, INC., | )<br>) |
| Defendant-Appellant and Cross-Appellee, | )<br>) |
| and | )<br>) |
| THE DEPARTMENT OF TRANSPORTATION, | ) Honorable<br>) Mark M. Joy, |
| Defendant-Appellee and Cross-Appellee. | ) Judge, presiding. |

---

**Opinion Filed**:      April 30, 2008

---

**Justices**:      Honorable Richard P. Goldenhersh, J.

                    Honorable Melissa A. Chapman, J.
                    Honorable James K. Donovan, J.
                    Concur

---

**Attorney**
**for**
**Appellant**
     Patrick M. Flynn, Flynn & Guymon, 23 Public Square, Suite 440, Belleville,
IL 62220 (attorney for Thiems Construction Co., Inc.)

---

**Attorneys**
**for**
**Appellees**
     Thomas W. Burkart, Burkart Law Offices, 130 West State Street, P.O. Box 447,
Hamel, IL 62046 (attorney for Korte & Luitjohan Contractors, Inc.); Lisa Madigan,
Attorney General, Gary Feinerman, Solicitor General, Erik Light, Assistant
Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601
(attorneys for The Department of Transportation)