# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849

---

| | |
|---|---|
| Appellate Court Caption | MIDWAY PARK SAVER, a Division of Capital Counselors, Ltd., Plaintiff-Appellant, v. SARCO PUTTY COMPANY and EDWARD A. SARSFIELD III, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0849 |
| Filed | August 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an agreement under which plaintiff leased land from defendant for use as a parking lot, the count alleging that defendant breached the lease by refusing to allow plaintiff to erect additional fence and wire was properly dismissed, but the dismissal of the count of plaintiff's amended complaint alleging that defendant breached the implied covenant of quiet enjoyment by removing fence clips and a guardrail was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-2038; the Hon. Daniel J. Kelley and the Hon. Charles R. Winkler, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Fuoco Law Group, Ltd., of Highland Park (Steven C. Fuoco, of counsel), for appellant. |
| | |
| | Law Offices of Stuart P. Krauskopf, P.C., of Chicago (Stuart P. Krauskopf and Michael A. Schnitzer, of counsel), for appellees. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion. |

## OPINION

¶ 1    This appeal arises from a January 12, 2007 order entered by the circuit court of Cook County which dismissed with prejudice count I of plaintiff-appellant Midway Park Saver's (Midway) complaint; an August 7, 2009 order which denied Midway's motion for reconsideration; and a June 11, 2010 order which dismissed with prejudice counts I and II of Midway's amended complaint. On appeal, Midway argues that: (1) the trial court erred in dismissing count I of Midway's original complaint; (2) the trial court erred in denying Midway's motion for reconsideration; and (3) the trial court erred in dismissing counts I and II of Midway's amended complaint. For the following reasons, we affirm in part, reverse in part, and remand the case to the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3    In 1993, Midway operated a public parking lot located east of Midway Airport at 4607 West 59th Street, Chicago, Illinois. Defendant-appellee Sarco Putty Company, an Illinois corporation, and Edward A. Sarsfield, corporate secretary of Sarco Putty Company (collectively Sarco), owned vacant land to the west and adjacent to Midway's parking lot. On September 30, 1993, Midway and Sarco entered into a lease agreement for Midway to lease Sarco's vacant land in order to expand its parking lot. The lease was to run from January 1, 1994 until December 31, 2002, with an option to extend the lease for three years until December 31, 2005. The lease allowed Midway to take possession of the vacant land on January 1, 1994, and payment of the first year's rent was due on that date. The lease also required Midway to make improvements to the vacant land at its own cost. The lease contained the following three provisions which are at issue in this case:

        "3. Lessee at its own expense shall cause the premises to be improved by way of crushed rock and/or black-topped road and parking lot, erection of adjacent fences as allowable by the City of Chicago, installation of parking stalls, lighting and a service building on the premises; the cost of which including all permits will be borne by Lessee

-2-

and Lessee shall indemnify Lessor and save Lessor harmless from any and all claims, liens, fines, charges, causes of action or any other encumbrances rising out of said construction or improvement of the premises. At the end of this lease any and all improvements presently then on the premises shall be considered as part of and be owned by Lessor. Lessee shall only have the right to remove such items that are removable and not those items that have become a permanent part of the demised premises.

4. Not [*sic*] withstanding the provision set forth in paragraph one hereof, Lessor agrees that the first year's payment of rent shall not begin until Lessee has fully installed all of the improvements as indicated above but that the installation of same shall be completed no later than December 31, 1993.

7. Lessor shall not be liable to Lessee for any damage or injury to him or his property occasioned by the failure of Lessor to keep the Premises in repair, and shall not be liable for any injury done or occasioned by wind or by or from any defect in plumbing, electric wiring or of insulation thereof, gas pipes, water pipes or steam pipes, or from broken stairs, porches, railings, or walks, or from the backing up of any sewer pipe or down-spout, or from the bursting, leaking or running of any tank, tub, washstand, water closet or waste pipe, drain or any other pipe or tank in, upon or about the Premises or the building of which they [a]re a part nor from the escape of steam or hot water from any radiator, it being agreed that said radiators are under the control of Lessee, nor for any such damage or injury occasioned by water, snow, or ice being upon or coming through the roof, skylight, trap-door, stairs, walks or any other place upon or near the Premises or otherwise, nor for any such damage or injury done or occasioned by the falling of any fixture, plaster or stucco, nor for any damage or injury arising from any act, omission or negligence of co-tenants or of other persons, occupants of the same building or of adjoining or contiguous buildings or of owners of adjacent or contiguous property, or of Lessor's agents or Lessor himself, all claims for any such damage or injury being hereby expressly waived by Lessee."

¶ 4    As stated in paragraph 3 of the lease agreement, there was a December 31, 1993 deadline for completion of all improvements. Midway made some improvements to the vacant land by December 31, 1993, and paid Sarco rent for the first year on January 1, 1994. Throughout the term of the lease during the later 1990s and early 2000s, Midway made numerous improvements to the parking lot, each time after consulting with Sarco and obtaining its approval. Midway continued to lease the parking lot from Sarco throughout the three-year option period from 2002 to 2005. During that time, Midway and Sarco were negotiating the terms of a new lease agreement. At some point in 2003, Midway began to notice that vandals were gaining entry to the parking lot and damaging cars parked there. Midway identified the vandals' access point as an area on the land that was leased from Sarco. Midway planned to block the vandals' access by erecting, at its own cost, an additional fence with razor wire. Midway proposed its plan to erect the additional fence to Sarco, and Sarco refused. Sarco claims that it did not allow Midway to erect the additional fence with razor wire because it wanted to get a new lease agreement signed and there were already fences in place around the property. Midway then hired additional parking lot personnel during the nighttime hours in an effort to stop the vandals; however, the vandalism continued.

-3-

¶ 5    The lease expired on December 31, 2005; however, Midway continued to occupy the land and pay its monthly rent. In January 2006, Sarco removed parking lot fencing clips and took down 15 feet of guardrail that Midway had installed. After removal of the fencing clips and guardrail, a customer's car was stolen from the parking lot and many other cars were vandalized. Lease negotiations between the parties broke down further and Midway began to vacate Sarco's property. Midway put up sawhorse barricades to mark the property line between Midway's parking lot and Sarco's land. In March 2006, after Midway had moved all of its operations from Sarco's property, Sarco removed the sawhorse barricades previously erected by Midway and put them inside Sarco's building.

¶ 6    On February 23, 2006, Midway filed a two-count complaint against Sarco in the circuit court of Cook County claiming that: (1) Sarco breached the lease agreement between the parties because it refused to allow Midway to erect the additional fence with razor wire; and (2) Sarco's removal of the fencing clips and guardrail that Midway had installed constituted willful and wanton misconduct. On May 5, 2006, Sarco filed a motion to dismiss Midway's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2004)). On January 12, 2007, the parties appeared in the circuit court of Cook County for argument on Sarco's motion to dismiss. The court granted with prejudice Sarco's motion to dismiss count I of Midway's complaint for breach of the lease agreement. The court ruled that the terms of the lease agreement were unambiguous and clearly stated that all improvements were to be completed by December 31, 1993. However, the court denied Sarco's motion to dismiss count II of Midway's complaint for willful and wanton misconduct. Specifically, the court ruled that Midway was a holdover tenant in 2006, and not a tenant in sufferance as Sarco argued, when Sarco removed the fence clips and guardrail that Midway installed. The court found that Sarco did not have the right to remove the fence clips and guardrail against Midway's wishes because Midway still had an *interest* in the property.

¶ 7    On February 13, 2008, the parties appeared for a case management conference in the circuit court of Cook County in front of a different judge who was the successor to the judge who had made the earlier rulings. On April 30, 2009, Midway filed a motion for reconsideration of the January 12, 2007 order dismissing count I of Midway's complaint for breach of the lease agreement. On August 7, 2009, the successor judge denied Midway's motion for reconsideration and found that there was no legal reason why the January 12, 2007 order of his predecessor should be vacated. Midway's motion for leave to file an amended complaint was granted on January 19, 2010. On February 18, 2010, the trial court gave Sarco until March 11, 2010 to answer or otherwise plead. On March 2, 2010, Midway filed a three-count amended complaint alleging that: (1) because the parties had modified the terms of the lease agreement, Sarco breached the lease agreement between the parties by refusing to allow Midway to erect the additional fence; (2) Sarco's removal of the fence clips and guardrail that Midway installed breached the implied covenant of quiet enjoyment; and (3) Sarco's removal of Midway's property line barricades constituted conversion.

¶ 8    On March 19, 2010, Midway filed a motion for default because Sarco had yet to answer. On March 25, 2010, Sarco filed a motion to dismiss Midway's amended complaint pursuant to section 2-619 of the Code. On June 11, 2010, the trial court granted with prejudice Sarco's motion to dismiss Midway's amended complaint as to count I for breach of the lease

-4-

agreement and count II for breach of the implied covenant of quiet enjoyment. The trial court reasoned that counts I and II in the amended complaint were "substantially similar to what was decided by [the prior judge] on [January 12, 2007] and this court on [August 7, 2009]." The court also found that no new contract was created between the parties as a matter of law. The court denied Sarco's motion to dismiss as to count III of Midway's amended complaint, which alleged conversion, and also denied Midway's oral motion for language and a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006).

¶ 9    On January 4, 2011, trial commenced in the circuit court of Cook County only as to the conversion count of Midway's amended complaint. On January 7, 2011, the jury found in favor of Midway and awarded Midway $100 in compensatory damages and $250 in punitive damages. Sarco then made an oral motion for a directed verdict. On February 28, 2011, the trial court denied Sarco's motion for a directed verdict and entered judgment in favor of Midway. On March 18, 2011, Midway filed a timely notice of appeal.

¶ 10                                    ANALYSIS

¶ 11    On appeal, Midway challenges the interlocutory orders that dismissed count I of Midway's original complaint, which alleged breach of the lease agreement; denied Midway's motion for reconsideration; dismissed count I of Midway's amended complaint, which alleged breach of the lease agreement; and dismissed count II of Midway's amended complaint, which alleged breach of the implied covenant of quiet enjoyment. The matter went to trial on January 4, 2011 only as to count III, the conversion claim in Midway's amended complaint. On February 28, 2011, the trial court entered final judgment in favor of Midway. On March 18, 2011, Midway filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 303(a) (eff. May 30, 2008). Therefore, we have jurisdiction to consider Midway's arguments on appeal.

¶ 12    Midway's arguments challenge the trial court rulings as to the count in its original complaint, which alleged breach of the lease agreement, and another ruling by the trial court regarding breach of the lease agreement and implied covenant of quiet enjoyment as alleged in the amended complaint. We will discuss the arguments for the original complaint and the amended complaint separately.

¶ 13    We first examine Midway's argument regarding the original complaint. Midway alleges that the trial court erred in dismissing count I of the original complaint, which pled breach of the lease agreement. A lease agreement is a contract so contractual rules of interpretation apply. See *Clarendon America Insurance Co. v. Prime Group Realty Services, Inc.*, 389 Ill. App. 3d 724, 729, 907 N.E.2d 6, 11-12 (2009). In contract interpretation, the primary goal is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms. *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 22, 963 N.E.2d 949. "Language *** is not ambiguous merely because the parties disagree as to its interpretation." *Id*. The reviewing court will not strain to find ambiguity where none exists, and disagreements as to the interpretation of a contract must be reasonable. *Id*.

¶ 14    A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency

of the complaint but asserts affirmative defenses or other matters that avoid or defeat the plaintiff's claim. *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1019, 936 N.E.2d 1198, 1205 (2010). All properly pleaded facts are accepted as true and a reviewing court is concerned only with the question of law presented by the pleadings. *Thornton v. Shah*, 333 Ill. App. 3d 1011, 1019, 777 N.E.2d 396, 403 (2002). The reviewing court applies the *de novo* standard of review to the trial court's grant of a motion to dismiss pursuant to section 2-619 of the Code and to the construction, interpretation, or legal effect of a contract. *Freeman v. Williamson*, 383 Ill. App. 3d 933, 936, 890 N.E.2d 1127, 1131 (2008).

¶ 15    Midway argues that the December 31, 1993 deadline in the lease agreement for completing improvements was not a bar to all future improvements on Sarco's property, but instead was a trigger date for the rental payment. After considering the entire lease as a whole, the trial court ruled that the terms of the lease agreement were unambiguous. The court found that the lease agreement clearly stated that Midway had the express right to make improvements to Sarco's land, however, all such improvements were to be completed by December 31, 1993.

¶ 16    Midway's argument is rebutted by the clear language of the lease agreement. Paragraph 3 of the lease agreement required Midway to make improvements such as; paving, erection of fences, and installation of parking stalls, to Sarco's property. Paragraph 4 states "[l]essor agrees that the first year's payment of rent shall not begin until Lessee has fully installed all of the improvements as indicated above *but that the installation of same shall be completed no later than December 31, 1993*." (Emphasis added.) Thus, paragraph 4 clearly states that the improvements that Midway was to make as outlined in paragraph 3 must be completed by December 31, 1993. We agree with the trial court that the terms of these provisions are unambiguous. Therefore, the trial court did not err in granting Sarco's motion to dismiss count I of Midway's original complaint for breach of the lease agreement.

¶ 17    We next discuss Midway's argument that the trial court erred in denying its motion for reconsideration of the dismissal of count I of its original complaint. We note that the trial court's order denying Midway's motion for reconsideration was not a final order. It has been held that "an interlocutory order may be reviewed, modified or vacated at any time before final judgment, and it is of no consequence that the original order was entered by another circuit judge." *Balciunas v. Duff*, 94 Ill. 2d 176, 185, 446 N.E.2d 242, 246 (1983). A reviewing court will not reverse the trial court's decision to grant or deny a motion for reconsideration absent an abuse of discretion. *Williams v. Dorsey*, 273 Ill. App. 3d 893, 903, 652 N.E.2d 1286, 1293 (1995).

¶ 18    In its motion for reconsideration, Midway argued that new facts and a misapplication of law by the trial court warranted a reversal of the dismissal of count I of its original complaint. Midway asserted that the deposition of Midway's owner, Roger Duba, yielded new facts after the order dismissing count I of the original complaint had been entered. According to Midway, these new facts included Roger Duba's belief that the December 31, 1993 deadline for making improvements was only included in the lease agreement as a trigger date for rental payments, and further that Midway made multiple improvements to Sarco's property after the December 31, 1993 deadline. Each time an improvement was made Midway

consulted with Sarco and obtained its approval. Midway did not explain why these facts were unknown or unasserted prior to filing its motion for reconsideration.

¶ 19    In denying Midway's motion for reconsideration, the trial court ruled that there was no legal reason for reversal of the prior order which dismissed count I of Midway's original complaint. Although Midway claimed that Roger Duba's deposition testimony provided new facts, the court found that it was a restatement of Midway's claim in its original complaint and in its argument against Sarco's motion to dismiss. Language in a lease agreement is not ambiguous just because the parties disagree as to its interpretation. See *Anderson*, 2011 IL App (1st) 110748, ¶ 22, 963 N.E.2d 949. Thus, Midway's interpretation of the contract does not alter the trial court's or our analysis of the unambiguous language of the lease agreement.

¶ 20    Also, Midway argues that the fact that it made multiple improvements to Sarco's property after the December 31, 1993 deadline by consulting with Sarco and obtaining its approval for the improvements established that Sarco waived enforcement of the December 31, 1993 deadline. "Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right." *Whalen v. Kmart Corp.*, 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 993 (1988). Parties to a contract can waive provisions placed in the contract for their benefit, and waiver can be established by conduct indicating that strict compliance with the contractual provisions will not be required. *In re Liquidation of Inter-American Insurance Co. of Illinois*, 329 Ill. App. 3d 606, 619, 768 N.E.2d 182, 193 (2002). In this case, even if we were to agree with Midway and hold that Sarco waived the ability to use the December 31, 1993 deadline as a bar to any subsequent improvements to its property, Midway still would not be able to defeat dismissal of count I pursuant to section 2-619 of the Code. At most, Midway would be able to allege that Sarco's approval of Midway's other improvements established that December 31, 1993 was not the last day on which alterations to Sarco's property could be made. Further, Sarco's conduct in allowing some improvements subsequent to December 31, 1993, in no way relinquished its right or ability to refuse Midway's additional proposals for improvements to the property. Accordingly, Sarco's refusal to allow Midway to erect an additional fence on its property does not establish a cause of action for breach of the lease agreement.

¶ 21    Midway next argues that the trial court erred in denying its motion for reconsideration because it had a duty to repair Sarco's property throughout the lease. In support of this argument, Midway cites *Seago v. Roy*, 97 Ill. App. 3d 6, 424 N.E.2d 640 (1981). Midway attempts to use *Seago* to assert that a landlord has no duty to repair rented property, instead, the tenant who is in the premises has a duty to make repairs. See *Seago*, 97 Ill. App. 3d at 8, 424 N.E.2d at 641. Based on this reasoning, Midway argues that it had the right to erect an additional fence with barbed wire, and Sarco breached the lease agreement by refusing to allow Midway to erect the additional fence. We note that Midway's original complaint, briefs, and motion for reconsideration argued its right to make *improvements* to Sarco's property, not merely *repairs*. Morever, *Seago* dealt exclusively with a plaintiff's allegation that a landlord's failure to fix broken stairs led to an accident and injury. The facts of *Seago* are inapposite and have no applicability to this case. Thus, the trial court did not abuse its discretion in denying Midway's motion for reconsideration of the January 12, 2007 order, which dismissed with prejudice count I of Midway's original complaint.

¶ 22      We next examine Midway's argument that the trial court erred in dismissing with prejudice count I for breach of the lease agreement and count II for breach of the implied covenant of quiet enjoyment as alleged in Midway's amended complaint. Midway argues that count I of its amended complaint alleged an entirely new theory. Specifically, it alleged that the parties' conduct created a new modified contract. When the terms of a contract are clear, parol or extrinsic evidence will not be admitted to vary or add to the terms of the contract. *E.A. Cox Co. v. Road Savers International Corp.*, 271 Ill. App. 3d 144, 152, 648 N.E.2d 271, 277 (1995). "However, extrinsic evidence is admissible to show a subsequent oral agreement which modifies the terms of the written contract or to show that a provision of a written contract has been waived." *Id.* When extrinsic evidence is used to show modification of a contract, the question of the final agreement of the parties is usually a question of fact to be presented to the jury. *Id.* However, if after considering the extrinsic evidence, the court determines that there is only one reasonable conclusion, the issue can be decided by the court as a matter of law. *Id.*, 648 N.E.2d at 277-78. When the trial court rules on a motion to dismiss pursuant to section 2-619 of the Code, it may consider pleadings, depositions, and affidavits. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 84, 961 N.E.2d 425. The reviewing court must accept as true all well-pled facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *Id.* However, even if the trial court dismissed on an improper ground, the reviewing court may affirm the dismissal on any basis if the record supports a proper ground for dismissal. *Id.*

¶ 23      In this case, Midway argues that the parties' conduct created an entirely new lease agreement under which the parties operated during the duration of the lease. Sarco argues that extrinsic evidence of the parties' conduct should not be considered and the terms of the original lease agreement should govern. In ruling on Sarco's motion to dismiss Midway's amended complaint, the trial court ruled that the count for breach of the lease agreement in Midway's amended complaint was properly dismissed with prejudice because it was "substantially similar to what was decided by [the prior judge] on [January 12, 2007] and this court on [August 7, 2009]." Although we disagree with the trial court's reasoning, we affirm the trial court's dismissal of count I of Midway's amended complaint on other grounds.

¶ 24      It is clear that the parties had modified the express terms of the lease agreement regarding improvements made to Sarco's property after the December 31, 1993 deadline outlined in the agreement. However, rather than support Midway's argument, the parties' conduct defeats Midway's claim that Sarco breached the lease agreement when it refused to let Midway erect an additional fence in 2004. It is undisputed that Midway made several improvements to Sarco's property after the December 31, 1993 deadline. However, as Midway itself has stated, these improvements were completed "each time with Sarco's knowledge and assent after consultation." This demonstrates that Midway, being fully aware of the terms of the lease agreement, knew that it did not have the absolute right to alter Sarco's property after December 31, 1993. Each time an improvement was to be made, Midway consulted with Sarco and obtained Sarco's assent before proceeding. Nothing in the lease agreement precluded Sarco from giving permission for improvements after December 31, 1993. The limitation with respect to the deadline for improvements was on Midway, not Sarco. At most, the contract was modified to the extent that in order for Midway to make an

-8-

improvement to Sarco's property after the December 31, 1993 deadline, it needed to consult with and obtain approval from Sarco before making said improvement. Thus, Sarco's refusal to agree to Midway's proposal to erect an additional security fence in 2004 does not constitute a breach of the agreement. Sarco's refusal of Midway's proposal was within its rights even if we accept that the agreement had been modified by the conduct of the parties. We hold that the trial court did not err in finding that Sarco did not breach the lease agreement. Accordingly, the trial court's order dismissing count I of the amended complaint which alleged breach of the lease agreement, is affirmed.

¶ 25    Finally, Midway argues that the trial court erred in dismissing count II of its amended complaint for breach of the implied covenant of quiet enjoyment. A covenant of quiet enjoyment is implied in all leases and is breached when there is actual or constructive eviction of the lessee by the lessor of the property. See *Blue Cross Ass'n v. 666 North Lake Shore Drive Associates*, 100 Ill. App. 3d 647, 651-52, 427 N.E.2d 270, 272-73 (1981). However, breach of the covenant of quiet enjoyment may be found without finding that the lessor intended to deprive the lessee of possession of the property. *Id*. at 652, 427 N.E.2d at 273. In its amended complaint, Midway specifically alleged that beginning in 2006, it remained on Sarco's property as a month-to-month holdover tenant. Midway alleged that during this time, Sarco removed Midway's fence clips and guardrails in an effort to drive Midway off the property. Midway claimed that as a result of Sarco's actions, a car was stolen from Midway's parking lot for the first time and many other cars were seriously vandalized. Midway claimed that Sarco's actions constructively evicted Midway from the property.

¶ 26    In its motion to dismiss, Sarco argued that count II of Midway's amended complaint is predicated upon asking the court to create an implied covenant in the lease agreement granting Midway the right to enhance Sarco's property. Sarco claimed that the implied covenant argument was very similar to a claim Midway made in its motion to reconsider wherein it argued that an implied covenant should be found in the lease which obligates Midway to repair or enhance Sarco's property. Sarco argues that the trial court previously rejected that argument when it dismissed count I of Midway's original complaint with prejudice. In dismissing count II of Midway's amended complaint with prejudice, the trial court stated "the court agrees with the defendant that counts I and II are substantially similar to what was decided by [the prior judge] on [January 12, 2007] and this court on [August 7, 2009]." The court offered no other reasoning in support of its ruling.

¶ 27    Upon closer examination, however, it is evident that Sarco mischaracterized the claims in count II of Midway's amended complaint. Sarco claims that count II of Midway's amended complaint is simply a restatement of the implied covenant argument from its motion for reconsideration. This is inaccurate. Count II of Midway's amended complaint alleges an entirely different theory regarding Sarco's conduct of removing the fence clips and guard rails. Midway argued that, because of Sarco's conduct, it was constructively evicted from Sarco's property. Count II of the amended complaint does not allege an implied covenant to enhance Sarco's property as Sarco argued and the trial court adopted. Count II of Midway's amended complaint which alleged breach of the implied covenant of quiet enjoyment is substantially similar to count II of the original complaint which alleged willful and wanton conduct. The trial court found that count of the original complaint meritorious

and refused to dismiss it. Specifically, at the hearing on the motion to dismiss Midway's original complaint, the trial court ruled that Midway was a holdover tenant as a matter of law and that Midway still had an *interest* in the property when Sarco removed the fence clips and guardrail. The trial court ruled that it was reasonably foreseeable that Sarco's conduct could result in theft. The trial court then denied Sarco's motion to dismiss count II of Midway's original complaint for willful and wanton conduct.

¶ 28       When the trial court dismissed count II of Midway's amended complaint and found that it was substantially similar to that which the predecessor judge had previously dismissed, the court mistakenly equated it with the arguments in Midway's motion for reconsideration instead of with the arguments in Midway's original complaint. Nevertheless, it is clear that the claim for breach of the implied covenant of quiet enjoyment in count II of Midway's amended complaint is substantially similar to the claim in count II of the original complaint for willful and wanton conduct that the trial court refused to dismiss. Sarco has not offered any affirmative defenses or other assertions that defeat the claims in count II of Midway's amended complaint. Therefore, the trial court erred in dismissing count II of Midway's amended complaint.

¶ 29       In an alternative argument to defeat count II of Midway's amended complaint, Sarco asserts that paragraph 7 of the lease agreement prohibits recovery against Sarco for any damage to Midway's property arising from any act by Sarco or its agents. Midway argues that paragraph 7 of the lease agreement is void because it is in violation of section 1 of the Lessor's Liability Act (the Act) (765 ILCS 705/1 (West 1992)). At the time Midway and Sarco executed the lease agreement, section 1 of the Act stated:

> "§ 1. Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his or her agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable." 765 ILCS 705/1 (West 1992).

¶ 30       Sarco argues that the Act does not bar paragraph 7 of the lease agreement because the issue of negligence has never been raised in this case. However, that argument fails because it has been repeatedly held in Illinois that the Act is not limited solely to negligence claims. "Whether a particular lease provision is void depends not on the cause of action in which the lease provision is invoked, but rather, whether the language of the lease provision runs afoul of the statutory prohibition." *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150, 154, 689 N.E.2d 199, 202 (1997). Although Midway filed a contract action rather than a negligence action, that is of no consequence and does not nullify the statutory application. *Id*. If the lease provision violates the statutory prohibition, it is void and cannot be used to avoid liability or shift financial responsibility. *Id*. Also, although the Act only prohibits exculpatory lease provisions, it has been construed to prohibit indemnification provisions as well. *Id*. An exculpatory clause prevents a tenant from recovering damages for harm sustained as a result of the landlord's negligence. *Id*. "An indemnification or 'hold harmless' clause concerns the risk of harm to third parties caused by the landlord's negligence and seeks to shift the financial burden, for ultimate payment of damages, from

-10-

the landlord to the tenant." *Id.* A lease provision may contain characteristics from both indemnification and exculpation. *Id.*

¶ 31        In this case, paragraph 7 of the lease agreement states, in relevant part:

> "7. Lessor shall not be liable to Lessee for *** any damage or injury arising from any act, omission or negligence of co-tenants or of other persons, occupants of the same building or of adjoining or contiguous buildings or of owners of adjacent or contiguous property, or of Lessor's agents or Lessor himself, all claims for any such damage or injury being hereby expressly waived by Lessee."

This clause is clearly exculpatory as it attempts to prevent Midway from recovering damages for harm sustained as a result of *any* act, omission or negligence of Sarco or Sarco's agents. The final sentence of paragraph 7 also contains a clause which says that all claims for any damage or injury are expressly waived by Midway. "[A] general reference to 'any and all' claims, losses, injuries, and the like will generally be construed as indicating an intention by the parties that the indemnitee be indemnified for damages resulting from the indemnitee's own negligence." *Id.* at 155, 689 N.E.2d at 202. There does not need to be a specific reference to the indemnitee's own negligence in the indemnification clause. *Id.* Thus, paragraph 7 of the lease agreement is in direct violation of section 1 of the Act.

¶ 32        We note that an amendment in 2005 limited the scope of the Act so that it provided protection to only certain types of leases. Subsection (b) of section 1 of the Landlord and Tenant Act (formerly the Lessor's Liability Act) now states "[s]ubsection (a) does not apply to a provision in a non-residential lease that exempts the lessor from liability for property damage." 765 ILCS 705/1 (West 2006). This clause means that currently the Act does not apply to paragraph 7 of the lease agreement in question, and thus the Act could not be invoked by Midway to hold Sarco responsible as alleged. However, because the parties executed the lease agreement in 1993, and the amendment to the Act was enacted in 2005, the lease agreement is governed by the Act as it was in 1993. See *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 351, 918 N.E.2d 265, 275 (2009).

¶ 33        We note that there are slight factual differences between *Dubey* and the instant case. However, those differences do not negate the applicable analysis and holding. In *Dubey*, both the contract formation *and* the event that caused the plaintiff's damages occurred before section 1 of the Act was amended in August 2005. *Id.* at 346-48, 918 N.E.2d at 271-73. In the instant case, Midway and Sarco executed the lease agreement well before section 1 of the Act was amended, but the actions alleged in count II of the amended complaint (Sarco's removal of the fence clips) occurred *after* section 1 of the Act was amended. Nevertheless, it is well settled in Illinois that "the law in existence at the time a contract is entered into becomes part of the understanding of the parties and thus a part of their agreement." *Korte & Luitjohan Contractors, Inc. v. Thiems Construction Co.*, 381 Ill. App. 3d 1110, 1118, 887 N.E.2d 904, 910 (2008). At the time Midway and Sarco executed the lease agreement, the Act applied to paragraph 7. Thus, paragraph 7 was void and was not part of the original agreement. The parties never modified the lease agreement to renew or include paragraph 7 after section 1 of the Act was amended, and continued to operate under the terms of the lease agreement that was executed prior to the amendment of the Act. See *Price v. State Farm*

*Mutual Automobile Insurance Co.*, 116 Ill. App. 3d 463, 470-71, 452 N.E.2d 49, 54-55 (1983). The Act in effect in 1993 clearly bars Sarco's attempt to exculpate itself from responsibility for its own acts. Therefore, Sarco cannot rely on paragraph 7 as a bar to count II of Midway's amended complaint. Thus, the trial court erred in dismissing count II of Midway's amended complaint. Accordingly, count II of Midway's amended complaint, which alleges breach of the implied covenant of quiet enjoyment, must be reinstated.

¶ 34     For the foregoing reasons, we affirm the ruling of the circuit court of Cook County which dismissed count I of Midway's original complaint alleging breach of the lease agreement. We affirm the circuit court's ruling which denied Midway's motion for reconsideration of that order. We affirm the circuit court's ruling which dismissed count I of the amended complaint, which alleged breach of the lease agreement. We reverse the ruling of the circuit court which granted Sarco's motion to dismiss count II of Midway's amended complaint, which alleged breach of the implied covenant of quiet enjoyment. We reinstate count II of the amended complaint and remand this case to the circuit court for further proceedings consistent with this opinion.

¶ 35     Affirmed in part and reversed in part; cause remanded.