2023 IL App (1st) 220787-U

No. 1-22-0787

Order filed August 10, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BUFFALO GROVE VENTURE, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 2020 L 006832 |
| | ) | |
| FIVE FIFTHS, LLC, and JULIE CRAWFORD, | ) | Honorable |
| | ) | Thomas R. Mulroy, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Plaintiff-appellee Buffalo Grove Venture, LLC (Buffalo), was not obligated to serve defendant-appellant Five Fifths, LLC (Five Fifths) with a five-day notice of default for each month that Five Fifths was deficient in its monthly rent payments.

¶ 2    Buffalo filed a complaint for breach of commercial lease against Five Fifths and its guarantor Julie Crawford (Crawford). Buffalo sought to recover damages for Five Fifth's failure to make full and timely monthly rent payments pursuant to the lease.

¶ 3    Following a bench trial, the court found that Five Fifths had breached the lease. The court

awarded Buffalo compensatory damages, denied Five Fifth's motion to reconsider, and subsequently awarded Buffalo attorney fees and costs. This appeal followed. We affirm.[1]

¶ 4                                  I. BACKGROUND

¶ 5     The following facts are taken from the record on appeal, including the parties' agreed statement of facts, pursuant to Illinois Supreme Court Rule 323(d) (West 2020) (eff. July 1, 2017). On March 7, 2016, Five Fifths executed a five-year commercial lease with Buffalo to lease retail space at the Buffalo Grove Town Center for the purpose of operating a math tutoring franchise known as "Mathnasium." The lease term ran from March 1, 2016, through June 30, 2021. It was secured by a personal guaranty executed by Crawford.

¶ 6     Pursuant to the lease, Five Fifths was obligated to pay an initial monthly rent of $2317, plus certain additional charges, including a *pro-rata* share of real estate taxes, insurance expenses, and common area maintenance charges (CAM). Rent payments were due on the first of the month, with a five-day grace period, after which the tenant would be in default.

¶ 7     Shortly after executing the lease, Five Fifths began making partial monthly rent payments. Throughout Five Fifths' tenancy, Buffalo sent financial statements to Five Fifths each month notifying it of past and current outstanding rent, CAM, taxes, insurance, and late fees. On January 16, 2019, Buffalo served a five-day notice to Five Fifths demanding payment of back rent and other charges amounting to $7017.68. Subsequently, Five Fifths continued to make partial monthly rent payments.

¶ 8     In the spring of 2020, prior to expiration of the lease, Five Fifths stopped making rent payments and eventually vacated the premises without notice.

¶ 9     On June 26, 2020, Buffalo filed a two-count complaint for breach of lease against Five

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Fifths and Crawford, in her capacity as personal guarantor. Buffalo sought back rent, along with late fees and attorney fees. Buffalo subsequently filed an amended complaint to correct a scrivener's error.

¶ 10    At trial, Five Fifths argued that Buffalo's method of applying monthly rent payments to the previous month's past-due rent and late fees, leaving an overdue balance, obligated Buffalo to serve separate five-day notices for each month Five Fifths carried an overdue balance. The trial court rejected this argument. The court determined that the five-day notice served in January 2019 put Five Fifths on notice that it had been in continuous breach and default of the lease by failing to make full and timely monthly rent payments.

¶ 11    The parties agreed at trial that Five Fifths owed $60,890.43, representing arrearage and other charges. Judgment was entered in this amount on July 27, 2021, and Buffalo was granted leave to file its petition for attorney fees. The court subsequently denied Five Fifth's motion to reconsider.

¶ 12    On May 12, 2022, the trial court entered a final judgment in favor of Buffalo for compensatory damages ($60,890.43), prejudgment interest ($4324.05), costs ($1438.76), and attorney fees ($11,696), for a total of $78,349.24. This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14    Resolution of this appeal requires interpretation of the parties' lease agreement. "The interpretation of a lease is a question of law, to be determined by the reviewing court independent of the trial court's judgment." *Nutrasweet Co. v. American National Bank & Trust Company of Chicago*, 262 Ill. App. 3d 688, 694 (1994). "The rules for construing a lease are the same as the rules for construing any other contract." *Monroe Dearborn Ltd. Partnership v. Board of Education of the City of Chicago*, 271 Ill. App. 3d 457, 461-62 (1995). "A court's primary objective in

construing a contract is to ascertain and give effect to the parties' intentions as expressed through the contract's language." *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 25. "When presented with clear and unambiguous language, the intent of the parties must be determined from the language of the contract itself and given its plain and ordinary meaning." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. We consider the contract as a whole, viewing each provision in light of the other provisions. *In re Marriage of Grandt*, 2022 IL App (2d) 210648, ¶ 25.

¶ 15 Section 17.1 of the lease provides that a tenant is in default under the following conditions: any failure to pay any rent or other amount when due for more than five (5) days after written notice of such failure. Five Fifths admits that it "fell behind in its rent obligations under the Lease, so that an arrearage of outstanding rent and late fees accrued." Five Fifths also concedes that it "never fully paid off the Outstanding Rent and an amount outstanding arrearage existed from the date the January 2019 Notice of Default was served through the date of trial."

¶ 16 This case concerns the sufficiency of the five-day notice informing Five Fifths that, pursuant to section 17.1 of the lease, it was in default for failing to pay past-due rent. "The general purpose of notice is to apprise the person affected of the nature and purpose of a proceeding." *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 51; see also *Bloom Township High School v. Illinois Commerce Comm'n*, 309 Ill. App. 3d 163, 179 (1999) ("the purpose of a notice provision in either a contract or a statute is to ensure that a party is actually informed").

¶ 17 Here, Five Fifths acknowledges that Buffalo served it with a five-day notice for past due rent on January 16, 2019. It argues here, as it argued before the trial court, that Buffalo's method of applying monthly rent payments required Buffalo to serve separate five-day notices for each month Five Fifths carried an overdue balance.

¶ 18    Thus, the primary issue this court is asked to decide is whether Buffalo was obligated to serve written notices of default for each month that Five Fifths was behind in its monthly rent payments. We do not believe that Buffalo was under such an obligation.

¶ 19    Five Fifths argues here, as it argued before the trial court, that Buffalo's method of applying monthly rent payments required Buffalo to serve separate five-day notices for each month Five Fifths carried an overdue balance. We disagree. By the time Buffalo served Five Fifths with the January 16, 2019 notice, Five Fifths was in arrears in its payment of back rent and other charges in the amount of $7017.68.

¶ 20    In the ensuing months, Five Fifths made partial rent payments, but never fully paid the ongoing accruing balance. The record demonstrates that Five Fifths remained delinquent in its monthly rent payments and continually carried an overdue balance from each prior month. Five Fifths cites no legal authority nor points to any lease provision which obligated Buffalo to serve a separate five-day notice each month a balance was due, when the arrears had never been fully satisfied.

¶ 21    Inasmuch as Five Fifths concedes that it never fully paid the outstanding rent, its argument that it required additional and separate notice is unavailing. Five Fifths was aware per the January 16, 2019 notice that it was in arrears and admits that it remained so throughout trial. Moreover, Five Fifths received monthly statements notifying it of past and current outstanding rent, CAM, taxes, insurance, and late fees. Therefore, we find that the overdue rent requirement is satisfied. Based on the record before us, we find no error in the trial court's determination that Five Fifths was on notice that it was in continuous breach of the lease and that Buffalo reserved its right to hold Five Fifths in default for such breach.

¶ 22    We also note that in its verified amended complaint for breach of lease, Buffalo sought

monetary damages rather than possession of the retail space. As Buffalo pointed out in its brief, the verified complaint was "for a straight forward action for collection of unpaid rent, not a forcible entry and detainer action." This court has determined that "[a]n action for rent is founded upon an *express* or *implied contract*." (Emphasis in original.) *Sianis v. Kettler*, 168 Ill. App. 3d 1071, 1074 (1988). The notice that is required for an action for possession of real property is not required for an action for unpaid rent. *Id.* Therefore, since Buffalo was not seeking possession of the retail space, it was not required to serve Five Fifths with an additional five-day notice prior to filing its complaint seeking damages for Five Fifth's failure to make full and timely monthly rent payments pursuant to the lease.

¶ 23 Next, we reject Five Fifths' contention that Buffalo's acceptance of its partial monthly rent payments—and failure to serve it with five-day notices for each month it was behind in its monthly rent payments—indicates that Buffalo waived strict compliance with the lease or somehow lulled Five Fifths into believing that strict compliance with the applicable provisions of the lease was not required.

¶ 21 "Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right." *Whalen v. K-Mart Corp.*, 166 Ill. App. 3d 339, 343 (1988). "Waiver can be established by conduct indicating that strict compliance with the contractual provisions will not be required." *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 20.

¶ 22 Here, the record demonstrates that Buffalo did not conduct itself in any way that could have led Five Fifths to believe that strict compliance with the applicable provisions of the lease was not required. Buffalo sent monthly statements to Five Fifths notifying it of past and current outstanding rent, CAM, taxes, insurance, and late fees, dating back to November 2018. This was a clear indication to Five Fifths that Buffalo was seeking payment of back rent and other charges.

¶ 23    Section 23.1 of the lease provides in relevant part that "acceptance of rent by Landlord shall not be deemed a waiver of any earlier breach by Tenant of any term, covenant or condition hereof, regardless of the Landlord's knowledge of such breach when such rent is accepted." This court has recognized that "[t]he acceptance of rent, even after a notice to quit has been given, is not itself a waiver, but merely evidence to be considered in accordance with all the circumstances." *Wang v. Marcus Brush Co.*, 354 Ill. App. 3d 968, 970 (2005).

¶ 24    In sum, we find that Buffalo did not waive strict compliance with the lease or conduct itself in a manner which could have lulled Five Fifths into believing that strict compliance with the relevant provisions of the lease was not required.

¶ 25                                III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the trial court's judgments.

¶ 27    Affirmed.